[Crim. No. 2072. In Bank.—October 6, 1924.]

## THE PEOPLE, Respondent, v. ALBERTO CASTELLO et al., Appellants. ·

[1] CRIMINAL LAW — CONFESSIONS — FOUNDATION FOR ADMISSION. — The rule is well settled that whether or not a confession is free and voluntary is a preliminary question addressed to the trial court; and a reviewing court cannot say that the trial court committed error in admitting a confession of guilt, unless such error appears as a matter of law from the record presented.

[2] ID.—DISCRETION.—The trial court is clothed with considerable discretion in determining whether or not a confession was free and voluntary, and where the evidence is conflicting on the subject it

must be assumed that the testimony concerning defendants' confession was properly admitted.

[3] ID.—STATEMENTS OF OFFICERS—LACK OF THREAT OR OFFER OF REWARD.—There was no error in receiving in evidence confessions of defendants charged with crime, even though the arresting officers at the time the confessions were obtained stated to the defendants that they had the goods on them and that they "had just as well come clean," as the statement carried no threat with it, or hope of reward, or promise of immunity.

[4] ID.—PHYSICAL FACTS—CORROBORATION.—Where physical facts and circumstances corroborate confessions of guilt the reason of the rule which would otherwise exclude involuntary confessions to this extent ceases to exist.

[5] ID.—DECEPTION IN OBTAINING CONFESSION.—The fact that a confession was procured by the employment of falsehood by a police officer, detective, or other person does not alone exclude it; nor does the employment of any artifice, deception, or fraud exclude it, if the artifice or fraud employed was not calculated to procure an untrue statement. Neither does the fact that a confession was obtained by a promise of secrecy render it incompetent, if there was no motive to produce a false statement.

(1) 16 **C. J.**, p. 735, sec. 1513.    (2) 17 **C. J.**, p. 242, sec. 3582. (3) 16 **C. J.**, p. 772, sec. 1477.    (4) 16 **C. J.**, p. 717, sec. 1468.    (5) 16 **C. J.**, p. 729, sec. 1497.

APPEAL from a judgment of the Superior Court of Los Angeles County. Arthur Keetch, Judge. Affirmed.

The facts are stated in the opinion of the court.

Cooper, Collings & Shreeve and M. G. Phillips for Appellants.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and J. L. Flynn for Respondent.

SEAWELL, J.—The defendants, Alberto Castello and Joe Albo, both natives of the republic of Mexico and aged, respectively, twenty-one and twenty-two years, were convicted in the superior court of the county of Los Angeles

3.    Voluntariness of confession made while under arrest, notes, 18 **L. R. A.** (**N. S.**) 796; 50 **L. R. A.** (**N. S.**) 1084. See, also, 8 **Cal. Jur.** 109; 1 **R. C. L.** 552.

5.    See 1 **R. C. L.** 560.

of the crime of grand larceny, committed on the thirtieth day of March, 1923. Before taking up their residences in Los Angeles they had resided at El Paso and had been acquaintances for several years. Castello had a wife and two young children. Both of said defendants speak and read the English language. On said thirtieth day of March, 1923, Mrs. K. Omura, a Japanese woman, had employed an expressman to convey her household effects and the family wearing apparel of herself, husband and children to a steamer on which she was soon to take passage for Japan. Said household effects and wearing apparel were packed in trunks, boxes, baskets, suitcases, and cloth containers. A Singer sewing-machine had been crated. All of said household effects, including said sewing-machine and wearing apparel, were placed by said expressman upon his autotruck. En route to the steamer landing he entered his place of business for a few minutes and upon returning found that the truck and its contents had been removed. A few days thereafter the truck was found abandoned with only a few minor articles upon it.

Castello's wife and children had left Los Angeles for El Paso ten days before the crime was committed. Castello and Albo left the state together for El Paso a short time after the commission of said crime and the disposal by them, and probably with the assistance of one Juarez, of most of the salable articles stolen. Said defendants remained at El Paso for something over two months and returned to Los Angeles singly. On the afternoon of July 30, 1923— the day on which Albo arrived in Los Angeles—he and Castello, for whom a search had been in progress for some time, were observed together in a street-car and placed under arrest by Officers S. S. Stone and Le Roy E. Richards. An investigation into the commission of the offense during the absence of said defendants developed facts which indisputably connected them with the commission of the crime. Castello, Albo, and probably said Juarez—the latter undoubtedly had guilty knowledge of the commission of the offense if he was not indeed an actual participant in its commission—disposed of the sewing-machine and a number of articles contained in the trunk to a countryman and had also concealed other articles which were a part of the stolen property in the home of Juarez and at the former

home of Castello, which were identified by Mrs. Omura as her property. Some of the trunks had been destroyed, but two of them remained intact and were indisputably identified by Mrs. Omura as her property. The contents of one trunk were disposed of for the sum of one hundred dollars and the sewing-machine was sold to another party for the sum of fifteen dollars. That Castello and Albo positively negotiated said sales, which were made in a manner that should have aroused strong suspicion in the mind of a person of average caution that the property offered for sale had been dishonestly obtained, there can be no reasonable doubt. That the three parties, including Juarez, participated in a division of the fruits of the sales is scarcely open to serious question. The testimony, independent of the confession, is sufficient to warrant such a conclusion. The *corpus delicti* was fully established.

In the afternoon of the day on which Castello and Albo were arrested they made oral confessions of guilty participation in said larceny, which confessions were, four days thereafter, repeated and reduced to writing by a phonographic reporter. Each of said defendants after having read his separate confession, which purported to have been freely and voluntarily made and with knowledge that it could be used against either or both of them, signed it as a detailed statement of the commission of the crime and his participation therein. At the trial it was the claim of each that said alleged confessions were not freely or voluntarily made by them, but that they were the result of extortion, punishment, and physical torture and abuse. In fact, they claimed to have been subjected to cruel and unusual treatment by the officers who arrested them and therefore urged in the court below, and urge here, that said confessions were inadmissible against them. To the foregoing objection may be added the additional claim made by them that inducements were held out by said officers to influence them to make confessions of guilt upon a promise that it would be better for them to do so. The main objection to the admission in evidence of said confessions is predicated upon the following admitted statement of Officer Richards: "We told them we had the goods on them and that they had just as well come clean." Officer Stone further said to the defendants that they could introduce them to persons who saw

them steal the property. According to the testimony of said officers the defendants said in this connection that "someone had squealed on them" and that they suspected a partner of theirs that was on North Broadway. A fourth party, referred to as Perez, was brought into the case by defendants as the person who procured the defendants to haul the stolen property to the persons who bought it and who, it is claimed, gave Castello a number of the stolen articles found in his possession. Castello claimed that this was the first time he had met Perez. The latter was given two or three *aliases* by the defendants and at times was placed by them at the home of Juarez. The personality of one shades into the personality of the other. It would seem that Perez was a fictitious person injected into the transaction to fill the part actually taken by Juarez whom the defendants for some reason seemed disposed to protect. Joe Perez and Joe Juarez were, without much doubt, interchangeable names representing but one person.

It is the claim of defendants, but denied by the officers present at the time, that what Officer Stone actually said to the defendants was "that we better come clear with the truth because he got the goods on us and we better come through if we want him to help us out." There can be no doubt but that the words "we better come through if you want him to help us out" would, under ordinary circumstances, if credited by the court, render the confessions inadmissible. (*People v. Barrie,* 49 Cal. 342; *People v. Gonzales,* 136 Cal. 666 [69 Pac. 487].) Defendant Castello, however, in another part of his testimony, departed from the statement above quoted and testified that the officer said that they had "everything on them" and that they might as well "come through with the truth and say everything." It is a further ground of complaint that the statement made by the officer that they could introduce them to the persons who saw them steal said property was a deception employed by said officers and was calculated to and did have the effect of procuring the confession.

[1] The rule is well settled that whether or not a confession is free and voluntary is a preliminary question addressed to the trial court. (*People v. Loper,* 159 Cal. 6 [Ann. Cas. 1912B, 1933, 112 Pac. 720]; *People v. Siemsen,* 153 Cal. 387 [95 Pac. 863]; *People v. Grafft,* 61 Cal.

App. 7 [214 Pac. 273]; *People* v. *Middleton,* 65 Cal. App. 175 [223 Pac. 448].) A reviewing court cannot say that the trial court committed error in admitting a confession of guilt unless such error appears as a matter of law from the record presented. [2] The trial court is clothed with considerable discretion in determining whether or not the confession was free and voluntary. (See authorities last above cited.) Where the evidence is conflicting on the subject it must be assumed that the testimony concerning defendants' confessions was properly admitted. (*People* v. *Tugwell,* 28 Cal. App. 348 [152 Pac. 740].)

It is true that the defendants testified that certain described atrocious cruelties were inflicted upon them, such as unquestionably would have excluded the confessions had the court given credence to the testimony directed to this issue. We have carefully examined the testimony of the defendants recounting said alleged acts of cruelty, which, as described, are of such a character as to almost challenge credulity. As related they sound higly improbable. If true they were susceptible of physical demonstration as well as establishment by proofs by persons who would have unquestionably known of their commission. The testimony offered to establish this issue is self-contradictory and is without convincing force, and the record furnishes substantial ground for its disbelief, both by the court and the jury which rejected it. The court went further, perhaps, than it was required to go, and by three separate, strongly worded instructions told the jury that notwithstanding the admission of the confessions, they should disregard them if they believed they were procured by fear or coercion and were not freely and voluntarily made. The court gave counsel on both sides wide latitude in the examination of said officers and the defendants (called on their own behalf), and the question whether the oral and written confessions were freely and voluntarily given or whether they were the product of coercion or unlawful inducements brought out by forbidden methods was thoroughly investigated. There being reasonable grounds upon which the court's ruling can properly be sustained we are not at liberty to disturb it. As a matter of course if the oral confessions were improperly obtained the same influence which procured them would be presumed to have continued

and also to have influenced the written confessions unless the circumstances of the case were sufficiently strong to overturn said presumption. We are considering the written confessions as though amenable to any objections which would have been valid against the oral confessions.

[3] In the light of the decisions of the courts of this state it cannot be said that error was committed in the reception of the confessions in evidence even though we accept as true, as we must, the statements of the arresting officers made to the defendants, which were to the effect that they had the goods on them and that defendants "had just as well come clean." The statement carried no threat with it or hope of reward or promise of immunity whatsoever. Neither was it sufficient to create terror or fear in the minds of defendants. It was nothing more than an accusatory remark. The officers made no promise that they would aid or assist defendants in obtaining any immunity whatsoever, nor did they hold out any inducements which could properly be said to have brought forth the confessions. In *People* v. *Haney,* 46 Cal. App. 317 [189 Pac. 338], Mr. Justice Waste, the author of said opinion, in considering the effect of a statement nearer to the border line of error than the one under consideration, made by a police sergeant to a defendant prior to making a confession of guilt, that "the truth would not hurt him and he *better* come out with it and tell it," held that no inducement was expressed in said language which could be said to have influenced the confession.

Undoubtedly portions of the statements or confessions were admissible even if it be conceded that they were involuntary and were obtained by duress or hope of reward or immunity from punishment for the reason that the defendants themselves directed the officers to the places where stolen articles had been concealed by them and to persons to whom they had sold other portions of the stolen property. [4] Physical facts and circumstances corroborated their confessions in this respect and the rule is that where physical facts and circumstances so corroborate confessions of guilt the reason of the rule which would otherwise exclude involuntary confessions to this extent ceases to exist. (*People* v. *Ah Ki,* 20 Cal. 177; *People* v. *Hoy Yen,* 34 Cal.

176; *People* v. *Murphy,* 47 Cal. 103; 8 Cal. Jur., p. 110; Greenleaf on Evidence, sec. 231.)

It is also claimed that the confessions should have been rejected by the court for the additional reason that defendants were told by the officers that they could introduce them to the persons who saw them steal the property. This statement was not in strict accord with the facts. The officers did know the parties to whom the defendants had sold portions of the stolen property shortly after it had been stolen and were in possession of other inculpatory facts and circumstances. The rule as to confessions induced by deceptive methods or false statements is fully stated in the following paragraph:

[5] "The fact that a confession was procured by the employment of falsehood by a police officer, detective, or other person does not alone exclude it; nor does the employment of any artifice, deception or fraud exclude it, if the artifice or fraud employed was not calculated to procure an untrue statement. Neither does the fact that a confession was obtained by a promise of secrecy render it incompetent, if there was no motive to produce a false statement." (16 C. J., p. 729.)

"The object of all the care which excludes confessions which are not voluntary, is to exclude testimony not probably true 'but where, in consequence of the information obtained from the prisoner, the property stolen, . . . or any other material fact is discovered, it is competent to show that such discovery was made conformable to the information given by the prisoner. The statement as to his knowledge of the place where the property or other evidence was to be found, being thus confirmed by the fact, is proved to be true, and not to have been fabricated in consequence of any inducement. It is competent, therefore, to inquire whether the prisoner stated that the thing would be found by searching a particular place, and to prove that it was accordingly so found; but it would not be competent to inquire whether he confessed that he had concealed it there.' " (1 Greenleaf on Evidence, 16th ed., sec. 231, p. 369.)

In view of our conclusion that the trial court did not commit error in admitting the confession it becomes unnecessary to decide whether a *prima facie* case was established by the

possession of stolen property by defendants shortly after the commission of said crime under the rule announced in *People* v. *Luchetti,* 119 Cal. 501 [51 Pac. 707], and whether such evidence would be sufficient to support the judgment without the confessions. However, the defendants' possession of recently stolen property, considered in connection with their failure to substantiate their explanation as to the circumstances attending the possession of the same by calling Juarez, who was at that time confined in the county jail, or to have made some effort to procure the attendance of Perez, if there was in fact such a person, either of whom could have exonerated the defendants' possession of said stolen property, would seem to justify the jury's conclusion that their story was fabricated. Under such a statement of facts and the inference of guilt which flowed therefrom, we, as a reviewing court, would not be justified in overturning the jury's verdict.

The judgment is affirmed.

Lawlor, J., Lennon, J., Waste, J., Richards, J., Shenk, J., and Myers, C. J., concurred.

Rehearing denied.

All the Justices concurred.