[Crim. No. 1241. Second Appellate District, Division One.—November 6, 1925.]

THE PEOPLE, Respondent, v. ARTHUR DUTRO et al., Appellants.

[1] CRIMINAL LAW—CONFESSION—VOLUNTARY CHARACTER—CONFLICTING EVIDENCE.—The question as to whether or not a confession is free and voluntary is at the outset one for the trial court to decide; and where, as in this prosecution for robbery, the evidence upon the question as to whether or not the confession was made voluntarily and without hope of reward or promise of immunity and not under duress, is in marked conflict, the appellate court will not interfere with the finding of the trial court.

[2] ID.—ADMISSIBILITY OF CONFESSION—PROVINCE OF COURT AND JURY. In a criminal prosecution, the question of the admission of an alleged confession of the defendant is in the first instance one for the trial court to decide, but the matter should finally go to the jury, which body has the right to determine what, if any, weight is to be given to the alleged confession and whether or not the confession was a free and voluntary act of the defendant, and the jury is properly instructed to that effect.

[3] ID.—ROBBERY—CONFESSION—IDENTITY OF CRIMES—EVIDENCE.—In a prosecution for robbery, the failure of the alleged confession of one of the defendants to name the complaining witness, or to state the place where the alleged hold-up occurred, does not render such confession inadmissible in evidence, where it is shown that at the time the confession was written the subject under discussion between said defendant and the officers was the robbery of the complaining witness and that it was such robbery, with the statements as to the time and place it occurred, that was charged to the defendants.

1. See 8 Cal. Jur. 110.
2. Determination of voluntariness of confession, notes, 46 Am. Rep. 254; 6 Am. St. Rep. 244; 18 L. R. A. (N. S.) 777. See, also, 8 Cal. Jur. 110, 118; 1 R. C. L. 577.

[4] ID.—VOIR DIRE EXAMINATION—INCRIMINATING EVIDENCE—ABSENCE OF PREJUDICE.—In this prosecution for robbery, testimony by one of the officers relating to an alleged plan or attempt to rob a bank and also with reference to a mask found was incompetent and immaterial, so far as the case in chief was concerned; but the admission of such evidence was not prejudicial to the defendants, where it was received after the defendants had testified on *voir dire* to the effect that the confession had been obtained by means of threats and coercion, and the matters objected to formed a part of the conversation and discussion between defendants and the officers at the time the latter were endeavoring to ascertain information concerning the history and conduct of defendants in the locality, and all the conversation took place immediately prior to the signing of the confession and at the time that defendants claimed they were being subject to brutal treatment and undue influence which resulted in the confession, and the court instructed the jury that the evidence in question should be disregarded by them "in determining the guilt or innocence of the defendants as to the offense charged in the information."

[5] ID.—ROBBERY—VERDICT—CERTAINTY OF FINDING.—In a prosecution for robbery, a verdict in which the jury "find the defendant . . . guilty of robbery, a felony as charged in the information, and find it to —— robbery of the first degrees," is not rendered null and void by reason of the omission of the word "be" in the concluding clause, as, notwithstanding such omission, the verdict clearly shows that the jury intended to find and did find the defendant guilty of robbery in the first degree.

[6] ID.—MISCONDUCT OF DISTRICT ATTORNEY—FAILURE OF DEFENDANTS TO TESTIFY—PROPER ARGUMENT.—In a criminal prosecution, the defendants may not predicate reversible error upon the act of the district attorney, in his closing argument to the jury, in referring to the fact that the defendants did not deny the charges against them, where the attorney for the defendants invited the district attorney to use the language he did, by making the assertion that the defendants denied that they were implicated in the offense, presumably having in mind their testimony on *voir dire* examination to determine the admissibility of their confession, whereas defendants did not testify so far as the case in chief was concerned.

---

(1) 16 C. J., p. 735, n. 34; 17 C. J., p. 242, n. 51.    (2) 16 C. J., p. 735, n. 34, p. 926, n. 67, p. 927, n. 69, 71, p. 1004, n. 35.    (3) 16 C. J., p. 732, n. 72 New.    (4) 16 C. J., p. 545, n. 66, p. 611, n. 39, p. 733, n. 1; 17 C. J., p. 317, n. 10.    (5) 16 C. J., p. 1101, n. 46, 51. (6) 16 C. J., p. 911, n. 74, p. 915, n. 40; 17 C. J., p. 62, n. 94, p. 273, n. 6, p. 368, n. 5; 34 Cyc., p. 1808, n. 78.

5.  See 8 Cal. Jur. 401.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Sidney N. Reeve, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Marshall A. Stutsman, Earl W. Wood and L. G. McArthur for Appellants.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

HAHN, J., *pro tem.*—Appellants, Arthur Dutro and Marion D. Stuart, were jointly charged by information filed by the district attorney of Los Angeles County with the crime of robbery.   From the judgment upon a verdict of guilty, and the order denying their motion for a new trial appellants prosecute this appeal.

Appellant Stuart alone has filed briefs, it being stipulated, however, that the appellant Dutro rests his appeal upon the points and authorities filed on behalf of appellant Stuart.

The complaining witness, one Lionel Gardner, testified that at about 7 o'clock on the evening of October 24, 1924, while walking along Seventh Street, in the city of Long Beach, he was met by Dutro and Stuart, appellants herein, coming from the opposite direction.   As they met, one of the appellants addressed Gardner with the inquiry, ''Where are you going?''   Upon the failure of Gardner to immediately reply defendant Dutro stepped back of Gardner while defendant Stuart drew a revolver and, pointing it at him, demanded, ''Have you got anything?''   Under the influence of the revolver Gardner replied, ''Yes,'' and handed over to Stuart three one dollar bills.   Thereupon Gardner was told to ''Beat it,'' which advice he proceeded to obey with alacrity.   As soon as possible thereafter, Gardner communicated the fact of the hold-up to the police of Long Beach, giving a detailed description of both Dutro and Stuart.

On the following morning Gardner was called to the Long Beach police station where he at once identified the defendants, who had been arrested that morning upon the description given the night before by him.

It further appears from the record that within a few hours after the arrest of the defendants, through the efforts of the police, defendant Dutro was induced to write out and sign an alleged confession, which paper was subsequently shown to the defendant Stuart and signed by him. The offer and admission of this alleged confession over appellant's objection is the first point urged as a ground for reversal. Appellant Stuart in his brief uses the following language in stating this point: "The court erred in admitting the alleged written confession of Marion D. Stuart for the reason that the *voir dire* evidence conclusively shows that this alleged confession was not voluntarily signed. The alleged confession was procured by indirect promises of reward, threats and the beating of the defendant Stuart and torturing of the defendant Dutro, as is conclusively shown by the evidence."

[1] An examination of the voluminous transcript, some four hundred pages of which is devoted to the examination of witnesses, and more or less bickering on the part of several of the counsel in the case, in connection with the admission of the alleged confession in evidence, discloses the fact that the evidence upon the question as to whether or not the confession was made voluntarily and without hope of reward or promise of immunity and not under duress, is in marked conflict, and under the well-established rule this court will not interfere with the finding of the trial court on this question. (*People* v. *Fouts*, 61 Cal. App. 242 [214 Pac. 657].)

It is well settled that the question as to whether or not a confession is free and voluntary is at the outset one for the court to decide. (*People* v. *Castello*, 194 Cal. 595 [229 Pac. 855]; *People* v. *Black*, 73 Cal. App. 13 [238 Pac. 374].)

We do not deem it necessary under the circumstances to discuss the relative weight or merit of the testimony offered on this point, but we are moved to observe in passing that the evidence cannot under any circumstances justify the use of the word "conclusively," as used by appellants in stating their point.

[2] The second point urged is that error was committed by the trial court in giving to the jury the following instruction:

"You are instructed that the action on the part of the court in admitting the alleged confession or statement into

evidence does not bind you to accept the court's conclusion, and that the question as to whether such alleged confession, or statement, if made, was voluntary or not, is for you to determine. If you conclude that it was not made voluntarily, then you have the right to, and it is your duty to disregard the same altogether. In other words, you have the right to reconsider the question as to whether the same was voluntary or not, and in this connection you are the judges of the effect and value of the evidence and of the credibility of the witnesses as the same pertains to such alleged confession or statement.''

.It is the well-settled rule in this state that the question of the admission of an alleged confession is in the first instance one for the court to decide. It is, however, a matter that should finally go to the jury, which body has the right to determine what, if any, weight is to be given to the alleged confession and whether or not the confession was a free and voluntary act of the defendant. (*People* v. *Castello,* 194 Cal. 595 [229 Pac. 855]; *People* v. *Black,* 73 Cal. App. 13 [238 Pac. 374].)

[3] Appellants further urge that error was committed in admitting the alleged confession written by the appellant Dutro, for the reason that nowhere in the writing does the name of the complaining witness Gardner appear as the person from whom the three dollars was taken, nor does the confession designate the place where the alleged hold-up occurred. It is true that these matters of information do not appear in the writing and yet the language clearly states the fact that the act was committed the night before and the amount obtained by the hold-up men was three dollars. Furthermore, it appears from the testimony given on *voir dire,* that prior to and at the time the confession was written by the appellant Dutro, the subject under discussion between him and the officers was the robbery of Gardner, and it was the robbery of Gardner with the statements as to time and place it occurred that was charged to the appellants. There can be no doubt that at the time Dutro wrote and signed the confession, as well as at the time Stuart attached his name to it, that both appellants knew that the affair referred to in the written confession was the hold-up of the complaining witness Gardner.

[4]　Another point urged by appellants as a reason for reversal of the judgment is the fact that during the *voir dire* examination relating to the admission of the written confession, the court permitted certain testimony to be given by one of the officers relating to a mask found and also a planned bank robbery. It appears from the record that during the conversation had by this officer with the defendant Dutro prior to the writing of the confession, mention was made of a certain mask which the officers questioned appellant Dutro about and which the officers claimed belonged to Dutro. In the same conversation reference was also made to an alleged plan or attempt to rob a bank by the appellants. Questions and answers relating to these matters were objected to by appellants and overruled by the court. The admission of this testimony, it is urged, was a serious error operating to the disadvantage of the appellants, particularly in view of the fact that the complaining witness Gardner testified that neither of the appellants wore a mask at the time of the hold-up. Manifestly, the evidence relating to the mask and to any planned bank robbery was immaterial and incompetent so far as this case in chief was concerned. But we are not prepared to say that there was prejudicial error in admitting this testimony, which was received after the defendants had testified to the effect that the confession had been obtained by means of threats and coercion. The matters objected to formed a part of the conversation and discussion between the appellants and the officers at the time that the officers were endeavoring to ascertain information concerning the history and conduct of appellants in and about Long Beach, and all of this conversation took place immediately prior to the signing of the confession and at the time that the appellants claimed they were being subjected to brutal treatment and undue influence which resulted in the confession. That the court intended to and did limit the testimony to the *voir dire* examination appears from the fact that the court gave to the jury the following instruction:

"The court instructs the jury that all the evidence in this case pertaining to a mask, the larceny of an automobile and an intent or attempt to rob a bank, if you find that there is any such evidence in this case, should be entirely disregarded by the jury in determining the guilt or inno-

cence of the defendants as to the offense charged in the information.''

[5] The verdict brought in by the jury finding Marion D. Stuart guilty reads as follows: ''We, the jury in the above-entitled action find the defendant Marion D. Stuart guilty of robbery, a felony as charged in the information, and find it to —— robbery of the first degree.'' Appellant Stuart contends that the verdict is null and void because of the failure of the foreman to insert the word ''be'' between the words ''to'' and ''robbery.'' There is absolutely no merit in this contention. The verdict clearly shows that the jury intended to find and did find the defendant guilty of robbery in the first degree. Any error in grammar or the use of words when the language clearly shows what is intended is wholly immaterial. The record shows that in the verdict found against the defendant Dutro the foreman did insert the word ''be,'' but apparently overlooked this in the Stuart verdict.

[6] It is urged that prejudicial error was committed by the district attorney in that during his argument in connection with this matter he used the following language:

''And he was afraid they were going to kill him. That is why he signed it. Did they ask him if the confession was true or false? No. They begged the issue. If it had been false, do you not think there would have been some testimony, when they were on the *voir dire* proceeding, to that effect? Mr. Stutsman said that 'they denied to the Long Beach officers at the time of their arrest; they denied it on the 25th; and they have denied it; and they denied it on the witness stand.' Is there a single bit of evidence from the lips of either of these defendants on the witness-stand in denial? Is there a single bit of evidence in this record from the lips of the defendant or either of them concerning the robbery?''

An examination of the record discloses the fact that the attorney for defendant Dutro, in his argument to the jury, asserted that the defendants had denied upon the witness-stand any complicity in the robbery. It was evidently this statement of defendant's counsel that the district attorney was answering. It appears that the defendants took the witness-stand only for the purpose of testifying in *voir dire* on the question of whether the confession had been given freely

and voluntarily. Evidently counsel for the defendant in his argument referring to the fact that the defendant had denied the commission of the offense while on the witness-stand, referred to the testimony given on the *voir dire* examination. But the appellants now contend even if that be true the district attorney had no right to refer to it in his argument. This contention might have been upheld were it not for the fact that the attorney for the appellant Dutro invited the district attorney to use the language he did, by making the assertions that the defendants had denied that they were implicated in the offense. Without question the district attorney had a right to answer or reply to any assertion of fact made by the defendant's counsel in his argument to the jury, and the record clearly shows this is all that the district attorney did or attempted to do. It does not appear that the district attorney made any further reference to the matter after the controversy which took place at the time that the district attorney made the statement in question had closed. Nor did appellant request the court to instruct the jury to disregard the remarks made by the district attorney. In the light of the overwhelming evidence produced in the case pointing to the defendant's guilt, we do not believe, from any standpoint in considering this question, the appellant can be heard to complain. (*People* v. *Nakis*, 184 Cal. 105 [193 Pac. 92].)

Other points are urged by appellants in support of their request for a reversal of the judgment, but we do not deem them of sufficient importance to merit detailed attention. Conceding that there may have been a deviation by the court from a correct course in some of its rulings, we do not feel that any such error justifies a reversal of the judgment. The record shows an abundance of evidence to support the verdict and we are satisfied that the jury was not misled by any error in the court's ruling.

The judgment of the court and the order denying defendant's motion for a new trial are affirmed.

Conrey, P. J., and Curtis, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 5, 1926, and a peti-

tion by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 4, 1926.

Curtis, J., being disqualified, did not participate in the petition to have the cause heard in the supreme court.