[Crim. No. 5341. In Bank. Oct. 17, 1952.]

THE PEOPLE, Respondent, v. LEONARD M. KIRKES,
Appellant.

720

W. P. Butcher, Canfield & Westwick and John A. Westwick for Appellant.

Edmund G. Brown, Attorney General, and Stanford D. Herlick, Deputy Attorney General, David S. Licker, District Attorney (Santa Barbara), Vern Thomas, Assistant District Attorney, and Frank J. McCarthy, Deputy District Attorney, for Respondent.

EDMONDS, J.—Leonard M. Kirkes was indicted for the murder of Margaret Senteney more than eight years after she was killed. A jury found him guilty of murder of the second degree and he has appealed from the judgment entered upon the verdict and from an order denying his motion for a new trial.

In 1942, Margaret, then 20 years of age, was living in Carpenteria. She left her parents shortly after dinner on a Friday evening to go to the home of a woman who lived about one-quarter of a mile away. On the following Sunday morning, her body was found lying beside a little used road some seven miles from Carpenteria. Death had been caused by strangulation and dislocation of vertebrae of the neck. She had not been sexually molested.

At the time of the homicide, Kirkes, a married man living in Carpenteria with his family, was a member of the State Highway Patrol. All of the evidence upon which the jury found him guilty is circumstantial. The most damaging testimony against him is that of Dorothy Egan who said that she saw Margaret enter and ride away in Kirkes' automobile on the fateful Friday evening. Mrs. Egan told no one of this occurrence until after Kirkes was indicted.

One of the vital elements in the prosecution's case is whether Kirkes' automobile trunk on the night of the crime contained a rubber floor mat capable of making impressions such as were found on the legs of the dead girl. Several witnesses for the defense testified that the mat which had been in the automobile was discarded some time prior to the date of the killing. The only evidence presented by the prosecution in this regard was that of one witness who said that the automobile had such a mat at the time he sold it to Kirkes some months previously. Several other elements in the chain of circumstantial evidence forged by the prosecution also rested upon the testimony of a single witness.

Kirkes does not contend that the evidence is insufficient to sustain the verdict and judgment. He challenges the judgment of conviction upon the ground that the deputy district attorney was guilty of misconduct. He also charges that several instructions given to the jury and certain rulings of the court upon the admission of evidence were prejudically erroneous.

In his closing argument to the jury, the deputy district attorney said: "As a member of the District Attorney's Office of this County [for 19 consecutive years] I have taken an oath

to prosecute cases to the best of my ability. If, during the conduct of this trial I have been—I have appeared to you to have been overly aggressive or tenacious, then I say to you that I was following out that oath, that in all sincerity I believe and I still believe and knew prior to the time that I became associated in this particular prosecution in the month of October, that this particular Defendant was guilty of this particular offense. I would not have been associated with the prosecution of this particular case unless I had so believed.''

Commenting upon the testimony of Mrs. Egan, and the efforts of the defense to cast doubt upon it, he remarked: ''The Court will instruct you that you have a right to make inferences and deductions from the evidence. . . . You have the right to infer that this girl waited for her own safety until this Defendant was apprehended, until he was indicted by a Grand Jury of this County, until proceedings were had against him, to bring him to justice, before coming forward, because if she had come forward, with the knowledge that that man had of every portion of the evidence in this case, her life wouldn't be worth that.''

No objection was made to the quoted statements of the deputy district attorney, nor were special admonitory instructions requested by Kirkes. Nevertheless, the court instructed the jury that it was ''to decide this case solely upon the evidence introduced and the inferences which you may deduce therefrom.'' The jurors were also instructed as follows: ''You are cautioned to distinguish carefully between the facts testified to by the witnesses and any statements made by the attorneys or the court during the trial or in the arguments, as to what facts have been proved. If there is any variance between the two, *you must*, in arriving at your verdict . . . consider only the facts testified to by the witnesses. You will also bear in mind that statements made by counsel during the trial or in their arguments are not evidence in the case. . . .

''The only legitimate purpose of argument is to assist you in arriving at a proper verdict from the evidence in the case, applying to such evidence the law as given you by the Court, and the only statements of counsel that are to be taken into consideration by you as establishing any of the facts in issue are such that may have been made during the trial as admissions or stipulations. . . .''

The court gave numerous instructions to the effect that Kirkes' guilt must be proved beyond a reasonable doubt, as

well as several concerning circumstantial evidence. The jurors were also instructed that they should consider the instructions as a whole. Other instructions dealt with the credibility of witnesses and the weight to be given to testimony. With them the following instruction was given: "The testimony of one witness entitled to full credit is sufficient for the proof of any fact and would justify a verdict in accordance with such testimony even though a number of witnesses on the other side might testify to an opposite state of facts, if, from the whole case, the jury believes that the greater weight of the evidence, considering its reliability and the credibility of the witness is on the side of the one witness as against the greater number of witnesses."

Kirkes contends that the remarks of the deputy district attorney constitute prejudicial misconduct. He also claims that the last-quoted instruction is confusing, contradictory and prejudicial. In addition, he cites several rulings upon the admissibility of evidence, certain other instructions, and a statement allowing him only one challenge to each of two alternate jurors as being prejudically erroneous.

The attorney general disputes each of these contentions and argues that the evidence of guilt was overwhelming and conclusive. According to him, the remarks of the deputy district attorney were not prejudicial and were invited by certain statements of Kirkes' counsel in his argument to the jury. The instruction upon the weight to be given the testimony of one witness, he says, was not erroneous, especially when viewed in the light of all the other instructions.

It is well established that statements by the prosecuting attorney, not based upon legitimate inferences from the evidence, to the effect that he has personal knowledge of the defendant's guilt and that he would not conduct the prosecution unless he believed the defendant to be guilty are misconduct. (*People* v. *Hidalgo*, 78 Cal.App.2d 926, 939, 941-942 [179 P.2d 102]; *People* v. *Chilcott*, 18 Cal.App.2d 583, 588 [64 P.2d 450]; *People* v. *Brown*, 81 Cal.App. 226, 241 [253 P. 735].) "There can be no excuse for such comment." (*People* v. *Podwys*, 6 Cal.App.2d 71, 74 [44 P.2d 377].) The classic expression of the rule appears in this oft-quoted statement in *People* v. *Edgar*, 34 Cal.App. 459, 468 [167 P. 891]:

"When the district attorney declared that he would not prosecute any man he did not believe to be guilty he thereby wrongfully placed his personal opinion of the guilt of the

defendant in evidence in the case. He was privileged to argue to the jury that it was his opinion formed from deductions made from the evidence adduced at the trial that the defendant was guilty of the crime charged (*People* v. *Rogers,* 163 Cal. 476 [126 P. 143] ; but his declaration to the jury that he would not prosecute any man whom he did not believe to be guilty was tantamount to an assertion that he believed in the guilt of the defendant at the very inception of the prosecution ; and necessarily such belief must have been founded upon the result of the district attorney's original and independent investigation of the charge, and therefore in all likelihood was based, in part at least, upon facts which did not appear and which perhaps could not have been shown in evidence.''

The latter portion of the quotation is especially pertinent here. Not only did the deputy district attorney state his belief in Kirkes' guilt, without which he would not have been associated with the prosecution; he also flatly stated that he knew of Kirkes' guilt ''prior to the time'' that he entered the case. Such knowledge could not have been based upon inferences from the evidence presented. In effect, the prosecutor, who had just laid a foundation by showing his own excellent character and long years of public service, was testifying to the ultimate fact in issue without disclosing the source of his information. Such markedly unfair conduct cannot be condoned.

Equally well-settled is the rule that statements of facts not in evidence by the prosecuting attorney in his argument to the jury constitute misconduct. (*People* v. *Evans, ante,* p. 242, 251 [246 P.2d 636]; *People* v. *Henderson,* 4 Cal.2d 188, 192-193 [48 P.2d 17] ; *People* v. *Cook,* 148 Cal. 334, 349-350 [83 P. 43].) Here, Mrs. Egan's long silence was excused by her asserted fear for her own safety if she testified against Kirkes. There is no evidence whatever upon which to base that statement. To picture Kirkes as a murderer who would kill again to cover his crime and so bold that he had threatened those who might testify against him was entirely unjustified.

These instances of misconduct make it unnecessary to examine in detail other inflammatory appeals to passion and prejudice in the closing argument. Without deciding whether they constitute further instances of misconduct, it fairly may be said that they add to the over-all unfairness of the argument.

The attorney general argues that, even if the deputy district attorney would otherwise be guilty of misconduct, his

remarks were invited by the argument of counsel for Kirkes and thus excusable. For the proposition that comments in reply to charges by opposing counsel do not constitute misconduct, reliance is placed upon a series of decisions holding that the reviewing court is unable to appraise the effect of criticized remarks when the record on appeal does not contain the arguments of counsel for each side. (*People* v. *Gingell*, 211 Cal. 532, 540 [296 P. 70] ; *People* v. *Hidalgo, supra*, p. 940 ; *People* v. *Rinesmith*, 40 Cal.App.2d 786, 792 [105 P.2d 1021] ; *People* v. *Chilcott, supra*, pp. 586-587 ; *People* v. *Passintino*, 94 Cal.App. 341, 342-343 [271 P. 205].) The rule of these cases clearly is inapplicable here, the entire argument of each counsel being included in the record on appeal. In this case, the appellate court can determine both whether the remarks were invited and whether, under the circumstances, they constitute misconduct.

Two other decisions upon which the attorney general relies hold that the prosecution may reply to an erroneous assertion of fact made by defense counsel in his argument, provided his answer to the challenge is fair. (*People* v. *Perkin*, 87 Cal. App.2d 365, 368 [197 P.2d 39] ; *People* v. *Dutro*, 75 Cal. App. 138, 144-145 [242 P. 84].) These cases are likewise distinguishable from the present situation, there being no erroneous statement of fact by counsel for Kirkes to be countered. All of the remarks by Kirkes' attorney were permissible inferences from or comments upon the evidence. *People* v. *Knight*, 44 Cal.App.2d 887, 895 [113 P.2d 226], does not sustain the position taken by the attorney general. It merely mentions in passing that certain instances of alleged misconduct resulted from statements made by defense counsel and that they were not sufficient to justify a reversal of the judgment.

The rule here applicable was stated most recently in *People* v. *Sampsell*, 34 Cal.2d 757, 765 [214 P.2d 813]. The court there held that misconduct cannot be justified even though the district attorney's remarks may be in reply to those made by counsel for the defendant. In response to this excuse for misconduct, it has been said: ''Assuming that the comments of the district attorney were not warranted by the evidence, his act would not be justified by the fact that defendant's counsel had already committed a like impropriety. The proper way to correct such an abuse of privilege on the part of either counsel is for his adversary to call it to the at-

tention of the court and have it stopped." (*People* v. *Kramer*, 117 Cal. 647, 650 [49 P. 842]; *People* v. *Cook, supra*, p. 349.)

The remarks of the deputy district attorney were most reprehensible. In addition, there is nothing in the argument by counsel for Kirkes which in any manner invited them. Comment upon Mrs. Egan's unexplained eight-year silence was not an excuse for the statement of a highly damaging fact concerning which there was absolutely no evidence.

Nevertheless, the attorney general contends that Kirkes cannot now be heard to complain of misconduct because he did not object to the statements when they were made, nor did he request the court to admonish the jury to disregard the objectionable argument. This argument is based upon the general rule "that when a district attorney is guilty of misconduct in the trial of a criminal case, it is ordinarily the duty of counsel for the defense promptly to call the attention of the court thereto, and assign it as misconduct, or request the court to instruct the jury to disregard it. Such assignments and requests are necessary as a foundation for a complaint to this court." (*People* v. *Sieber*, 201 Cal. 341, 356 [257 P. 64]; *People* v. *Meichtry*, 37 Cal.2d 385, 390 [231 P.2d 847]; *People* v. *West*, 215 Cal. 87, 96 [8 P.2d 463]; *People* v. *Nakis*, 184 Cal. 105, 116 [193 P. 92].)

"There is an exception to this well-recognized rule in cases where the comment is of such a character that the error could not be cured and the harmful result would not be obviated by a timely admonition or instruction to the jury." (*People* v. *West, supra*; *People* v. *Sampsell, supra*, p. 764; *People* v. *MacDonald*, 167 Cal. 545, 551 [140 P. 256]; *People* v. *Ford*, 89 Cal.App.2d 467, 471 [200 P.2d 867]; *People* v. *Hidalgo, supra*, p. 942; *People* v. *Simon*, 80 Cal.App. 675, 679 [252 P. 758].) ▮▮▮ Under the circumstances disclosed by this record, the objectionable remarks fall within the exception rather than the rule. They were of a type which repeatedly has been condemned as flagrant misconduct. Rather than consisting of a single statement interjected in the heat of debate, they were interspersed throughout the closing argument in such manner that their cumulative effect was devastating. Repeated objections might well have served to impress upon the jury the damaging force of the challenged assertions. A series of admonitions to the jury could not have cured the harmful effect of such misconduct.

"Whether the misconduct of a prosecuting attorney has prejudiced the substantial rights of a defendant must rest

largely upon the facts of each case. An appellate court may only reverse the judgment when it appears from all the facts that there has been a miscarriage of justice. (Const., art VI, § 4½.) Obviously, conduct of a prosecutor which would amount to prejudicial misconduct in one case might not result in a miscarriage of justice in another case. In other words, there is no definite rule by which asserted misconduct may be measured for the purpose of determining whether it prevented the defendant from having that fair and impartial trial which the law requires for every person charged with a crime." (*People* v. *Braun,* 14 Cal.2d 1, 7 [92 P.2d 402].)

Here the evidence is entirely circumstantial and conflicting. In important elements the prosecution's case depends upon the testimony of a single witness. The attorney general argues that the evidence is overwhelming and leads unmistakably to a conclusion of guilt. It is not weakened, he says, by the fact that it is circumstantial.

■ "Circumstantial evidence is as sufficient to convict as direct evidence." (*People* v. *Reed,* 38 Cal.2d 423, 431 [240 P.2d 590]; *People* v. *Koenig,* 29 Cal.2d 87, 91 [173 P.2d 1]; *People* v. *Hills,* 30 Cal.2d 694, 700 [185 P.2d 11].) ■ However, although it is sufficient in this case to sustain the judgment, the evidence does not point unerringly to Kirkes' guilt. The jury, in weighing the evidence presented by the prosecution against the directly conflicting evidence offered by Kirkes, must have found the scales of justice somewhat evenly balanced. Under such circumstances, the improper information that the deputy district attorney had personal knowledge of Kirkes' guilt, added to the unproven fact that a key witness had been placed in fear for her life, undoubtedly weighed heavily against Kirkes and well may have been the deciding factors which brought about his conviction. The misconduct of the deputy district attorney, therefore, resulted in a miscarriage of justice entitling Kirkes to a reversal of the judgment. (*People* v. *Braun, supra,* p. 8.) ■ That the jury was instructed generally to base its verdict exclusively upon the evidence does not prevent the misconduct from being prejudicial and requiring a reversal. (*People* v. *Berryman,* 6 Cal.2d 331, 337 [57 P.2d 136]; *People* v. *Fleming,* 166 Cal. 357, 381 [136 P. 291, Ann.Cas. 1915B 881].)

This conclusion makes it unnecessary to consider Kirkes' claim of error in the instruction concerning the weight to be given the testimony of one witness except as it may consti-

tute an additional ground for reversal of the judgment. The attorney general argues that the instruction is not erroneous, especially when read with the numerous correct instructions upon reasonable doubt. It deals only with the credibility of witnesses, he says, rather than with the burden of proof.

However, the instruction clearly transcends the bounds of one limited to the credibility of witnesses. It informed the jury that a verdict would be justified by the testimony of a single witness if the greater weight of all of the evidence was on the side of that witness as opposed to the greater number of witnesses. The result, in effect, was to tell the jury that it could convict if, from a preponderance of the evidence, it believed that a single fact was established by one witness.

A similar instruction was condemned in *Long* v. *Standard Oil Co.*, 92 Cal.App.2d 455, 462 [207 P.2d 837], the court saying: "The words 'would justify a verdict in accordance with such testimony' have no proper place in a statement of the rule. As defendant correctly says, proof of a single fact would not warrant a verdict unless it was the sole determinative fact in the case." However, under the circumstances of that civil case, in which the weight of the evidence was not questioned, the court held that the error was not prejudicial. But here the error must be related to a series of disputed facts, many of them resting upon the testimony of a single witness, which constituted the prosecution's chain of circumstantial evidence. No single fact in the chain is determinative.

This error must be considered in connection with the additional misstatement in the instruction that the determinative fact may be established simply by the greater weight of the evidence. Language similar to that here used has been held to be an incorrect statement of the law applicable in criminal cases. (*People* v. *Ames*, 61 Cal.App.2d 522, 534 [143 P.2d 92].) In the Ames case, however, the error appeared in one paragraph of a seven-page instruction, two and one-half pages of which were devoted to a correct statement of the doctrine of reasonable doubt. In addition, no consideration was given to the erroneous statement that proof of a single fact would warrant a verdict. Under those circumstances, the error was found not to be prejudicial.

When the combined errors in this instruction are related to the circumstances disclosed by this record, it becomes obvious that an irreconcilable conflict exists between the challenged instruction and the proper instructions upon circum-

stantial evidence and reasonable doubt. It is impossible to determine from the evidence which of the conflicting instructions formed the basis of the verdict reached by the jury. Under such circumstances, inconsistent instructions may constitute reversible error. (*People* v. *Cornett*, 33 Cal.2d 33, 41 [198 P.2d 877].) Considering the entire record in this case, the inconsistent instructions, together with the misconduct of the deputy district attorney, clearly have brought about a miscarriage of justice.

The judgment and the order denying a new trial are reversed.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.