Filed 3/3/21  P. v. Ellsworth CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B304909 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA077363) |
| v. | |
| ERIN CONOLLY ELLSWORTH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Affirmed.

Laura R. Sheppard, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.

—————————————

A jury convicted Erin Conolly Ellsworth of battering a blind man.  Ellsworth attacks the prosecutor's closing argument.  We affirm.  All statutory references are to the Penal Code.

I

Ellsworth resided at a sober living home with about a dozen other people, including Jesse Odum, Lucas Jackson, and Corey Hunter.  Ellsworth shared a room with Jackson and one other person.  Odum lived in a different room.

Ellsworth hit Jackson, Odum's friend.  Odum, who was blind, heard about the blow and confronted Ellsworth in Ellsworth's room.  A house rule required anyone who had a fight to leave the house and wait for the owner of the house.  Odum sought to enforce this rule and told Ellsworth to pack and wait outside.  Odum and Ellsworth argued.

Then Ellsworth punched Odum in the jaw.  This blow is the one at issue in this appeal.

The punch fractured Odum's jaw on both sides.  The necessary surgery inserted permanent metal plates in Odum's jaw.  His mouth was wired shut for two months.

An information charged Ellsworth with dependent adult abuse of Odum (§ 368, subd. (b)(1)) (count 1) and battery of Odum with serious bodily injury (§ 243, subd. (d)) (count 2).  As to each count, the information alleged Ellsworth inflicted great bodily injury upon Odum.  (§ 12022.7, subd. (a).)

Trial testimony lasted one day.  Ellsworth, Odum, and Hunter testified.

Ellsworth admitted punching Odum but claimed self-defense.  We excerpt the trial testimony, beginning with Hunter.

Hunter heard a loud argument coming from Ellsworth's room and went to the doorway.  Hunter saw Odum and Ellsworth

2

facing each other. Odum's back was to Hunter; Ellsworth was facing Hunter. Ellsworth "just went to attack [Odum]." Ellsworth punched Odum's jaw. Odum had been standing between the door and the bed and he fell to the floor in that area. Odum was "laid out on the floor."

Odum gave his version. He went "all the way in" Ellsworth's room. Ellsworth was on his bed off to the right. Odum was on the "other side of the room," which was "a few feet away," "a good five-feet mark," "[a]bout 5, 10 feet." He knew the room's spacing because his friend had lived in the room and he had spent time in it.

Odum was angry and upset when he entered Ellsworth's room. He told Ellsworth to wait outside the house because of Ellsworth's blow to Jackson. Ellsworth told Odum to get out of his room and to mind his own business. Odum said, "I'm not going anywhere," and said "hit me" repeatedly. He was not in Ellsworth's face before the punch. Odum put his hand up and waved toward himself in a "come-at-me motion." Odum denied making any movements toward Ellsworth. Ellsworth came across the room and hit him.

Ellsworth had a different account. Odum came in and got "right in my face." The room was too small for Odum to have been five to 10 feet away. Odum was "literally [an] arm's reach in front" of Ellsworth. Ellsworth told Odum to leave at least five times. Odum was "getting extremely loud" and said, "why don't you hit me, mother f'er." Odum was "so close to me. He was literally in my face. And all that he had to do is reach his hands out and grab me . . . ." "I felt scared. I felt that [Odum] was there to hurt me. And I wasn't—I had nowhere to go. I was basically cornered and trapped and had no escape . . . ."

3

Ellsworth "figured if he got a hold of me, I was in big trouble.  He outweighed me.  He was a lot bigger than me and a lot younger than me."  (At the time, Odum was 22 years old.  Ellsworth was 44 years old.)

Odum was "swirling his arms around, he went to grab at me, so I stepped out of the way, and that's when I threw my punch."  Jackson was in the doorway of the room and Ellsworth "thought [Jackson] was going to hurt me if I attempted to leave the room."  Ellsworth did not attempt to leave the room.

The jury deliberated for two hours before returning a guilty verdict for both counts and true findings for the great bodily injury allegations.

The court sentenced Ellsworth to six years in prison:  three years for count 1 plus three years for the great bodily injury enhancement.  It imposed a four-year term for count 2 but stayed this term under section 654.

II

Ellsworth challenges the prosecutor's closing argument.  Ellsworth has forfeited this claim, which in any event concerns two sentences that could not have affected the verdict.

We start by describing the prosecutor's closing argument.  This requires context.

After the punching incident, Odum said the city told the police about what happened and then Odum made a statement to police.  After that, Odum brought a civil case against the owner of the sober living home related to the incident.  When he spoke to police, Odum did not know he could bring a civil suit.

Ellsworth's closing argument challenged Odum's credibility in part because of Odum's civil case.  Ellsworth said Odum did not immediately report the punch to police because Odum knew

4

he was responsible for what happened.  Now that Odum had a civil suit, according to Ellsworth, Odum was "trying to minimize his involvement."

The prosecutor dismissed Ellsworth's argument about Odum's motives.  The prosecutor argued the case could not have affected Odum's testimony because Odum did not know he could bring a civil case until after he spoke to police.  The prosecutor continued, with the part Ellsworth challenges in italics:  "*And Mr. Odum was consistent with what he told police initially and what he testified here.*  [¶]  *And the reason you know he is consistent is because if he said anything differently, counsel would have pointed that out.*  He would have said, well, you told police this, and you would have heard from the officer.  Counsel would have made a big deal about how this is inconsistent."  Ellsworth did not object or request an admonition.

We survey some prosecutorial misconduct law.

Prosecutors have wide latitude during argument.  (*People v. Hill* (1998) 17 Cal.4th 800, 819 (*Hill*).)  A prosecutor may refer to matters that are common knowledge or that are illustrations drawn from common experience, history, or literature.  (*Ibid.*)

This wide latitude is not boundaryless.  A prosecutor may not go beyond the evidence.  (*People v. Benson* (1990) 52 Cal.3d 754, 794.)  Referring to facts not in evidence is misconduct.  (*Hill, supra*, 17 Cal.4th at pp. 827–828.)  Prosecutors may comment upon a defendant's failure to call a logical witness.  (*People v. Wilson* (2005) 36 Cal.4th 309, 338.)

On appeal, Ellsworth challenges the prosecutor's statement on two main grounds.

First, Ellsworth says the prosecutor's statement, "Mr. Odum was consistent with what he told police initially and what

5

he testified here," referred to facts outside the record because the content of the police statement was not in the record. The People counter the statement was part of a larger and proper argument about Ellsworth's failure to call a logical witness. Because Ellsworth forfeited the issue and because any error was harmless, we need not address this issue further.

Second, Ellsworth says the statement was misleading based on unadmitted evidence. In context, the prosecutor's statement was not misleading. Again, background is required to understand Ellsworth's argument. Ellsworth had sought to admit a hospital record's statement in which Odum allegedly said something that differed from his trial testimony. The court excluded the statement as hearsay. On appeal, Ellsworth agrees the ruling was proper but says the existence of this statement means the prosecutor misled the jury by saying Odum was consistent. In the context of the closing argument, however, the prosecutor's statement about consistency was about consistency with the police statement. Ellsworth's argument about the statement being misleading due to the unadmitted hearsay fails.

We turn to the issue of forfeiture.

Ellsworth forfeited his claim by failing to object and to request an admonition. Defendants generally may not complain of prosecutorial misconduct on appeal unless the defendant made a timely objection on the same ground and asked the court to tell the jury to disregard the impropriety. (*Hill, supra*, 17 Cal.4th at p. 820; see also *People v. Fayed* (2020) 9 Cal.5th 147, 208 [defendant forfeited claim challenging prosecution's reference during closing argument to facts defendant claimed were not in evidence by failing to object and request an admonition]; *People v. Caro* (2019) 7 Cal.5th 463, 511–512 (*Caro*) [same, forfeiting five

6

claims of prosecutorial misconduct]; *People v. Collins* (2010) 49 Cal.4th 175, 209–210 [same, forfeiting two claims of prosecutorial misconduct].) Ellsworth did not object and request an admonition and therefore forfeited this claim.

Forfeiture may be excused, however, if an objection or request for admonition would have been futile. (*Hill, supra,* 17 Cal.4th at p. 820.)

An objection and request for admonition would not have been futile. Ellsworth could have objected and asked the court to instruct the jury not to consider the prosecutor's statements about consistency between Odum's testimony and his statement to police. The court could have reminded the jury they did not learn about the contents of Odum's police statement.

Ellsworth posits an objection and admonition would have been futile because the court would have needed to "reopen the evidence, and then to admit a statement that was admittedly hearsay." This argument creates an untenable solution for a problem that does not exist. As we explained, the statement in context was about consistency between Odum's trial testimony and his statement to police. The court would not have needed to say anything about the hospital statement to cure this issue.

Ellsworth points to *People v. Kirkes* (1952) 39 Cal.2d 719 (*Kirkes*) and *People v. Alvarado* (2006) 141 Cal.App.4th 1577 (*Alvarado*), cases in which courts excused defendants' failures to object. The prosecutors' statements in *Kirkes* and *Alvarado* differ from those in this case.

In *Kirkes*, the prosecutor boasted of his own excellent character and long years of public service, spoke of his oath to prosecute cases to the best of his ability, and said he would not have prosecuted the case unless the defendant was guilty. In

short, the prosecutor personally vouched for the integrity of his case. (*Kirkes*, *supra*, 39 Cal.2d at pp. 721–722, 724.) He also said he knew the defendant was guilty before he entered the case, which was not supported by inferences from the evidence in the case. This conduct was "markedly unfair." (*Id.* at p. 724.)

In *Alvarado*, the prosecutor made similar statements. She said she had taken an oath not to prosecute a case if she had "any doubt that that crime occurred. [¶] The defendant charged is the person who did it." (*Alvarado*, *supra*, 141 Cal.App.4th at p. 1585.) The comments invited the jury to convict the defendant based on the prosecutor's opinion and the prestige of her office. Any admonition could not "unring the bell." (*Id.* at p. 1586.)

In this case, there was no unringable bell. The prosecutor made no statement alluding to her position, her oath, or her personal convictions about the defendant's guilt. An admonition would have sufficed.

Ellsworth mentions counsel's failure to object "may yet be ineffective assistance" but he sets forth no argument on this issue, which we therefore do not address.

On the merits, the confluence of three factors made the prosecutor's statement harmless.

First, the statement was brief. Ellsworth's opening brief cited two sentences of argument as being improper. Brief statements are generally less likely to warrant reversal. (See, e.g., *Caro, supra*, 7 Cal.5th at p. 511 [noting comments were "brief" in support of conclusion any misconduct was harmless].) For the first time in his reply brief, Ellsworth says the challenged statement spanned two pages and he quotes new portions of the prosecutor's statements beyond the two sentences he challenged in his opening brief. We may disregard arguments raised for the

first time in the reply brief. (*Worldmark, The Club v. Wyndham Resort Development Corp.* (2010) 187 Cal.App.4th 1017, 1030, fn. 7.) The brevity of the challenged statement supports our determination it was harmless.

Second, the court properly instructed the jury, "Statements made by the attorneys during the trial are not evidence." We presume jurors follow the court's instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) If the jury followed the court's instructions, it would not have based its decision on the challenged statements.

Third, it is not reasonably likely under any standard that the statements would have affected the jury's decision. Ellsworth admitted throwing the punch. His defense was self-defense. As the jury instructions stated, self-defense required him to believe, and have grounds for believing, Odum was about to inflict bodily injury upon him. (CALJIC No. 5.30.) Then, Ellsworth could use force he thought was reasonably necessary *and which a reasonable person would think was necessary* to prevent the apparent imminent injury. (*Ibid.*)

Ellsworth incorrectly says this was a close case and a credibility contest. The prosecution emphasized at trial and they argue on appeal that Ellsworth's punch was beyond what a reasonable person would think was necessary, meaning self-defense would not apply.

Even had a jury believed Ellsworth about Odum getting in his face and trying to grab Ellsworth, any reasonable jury would have found the punch excessive. We base this in part on the severity of the injury. Ellsworth delivered a blow powerful enough to fracture Odum's jaw in more than one place. Other aspects of the force show it was excessive. There was the type of

defense: a punch, not a push or a slap. There was the location of the blow: to the head, not the torso or the arms, which Ellsworth said Odum was swinging near him. And there was the disability of the victim. In this case, Odum's blindness meant Ellsworth required less force to avoid imminent harm. Ellsworth's testimony supports this point. Ellsworth said he was able to step away from Odum. Ellsworth's ability to sidestep Odum belies his assertion of being trapped.

Ellsworth's briefs mention unadmitted evidence about Odum's supposed history of violence. On appeal, Ellsworth does not challenge the court's exclusion of this evidence. Therefore, we do not consider it in our analysis.

Ellsworth's reply brief incorrectly says the Supreme Court's recent case *People v. Rodriguez* (2020) 9 Cal.5th 474 is "supportive" on the issue of harmlessness. That case dealt solely with the issue of whether a prosecutor's statement constituted misconduct. Indeed, the court explained the Attorney General had not argued harmlessness and "we express no view on the Court of Appeal's conclusions that the statements were prejudicial. We do observe, however, that courts have often found that brief statements such as those before us have limited prejudicial effect." (*Id.* at p. 487.) *Rodriguez* is neutral at best and does not help Ellsworth on the issue of harmlessness.

## DISPOSITION

The judgment is affirmed.


WILEY, J.

We concur:


BIGELOW, P. J.


GRIMES, J.