[No. H036965. Sixth Dist. Jan. 17, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
BERNARD BENNY CALDWELL, Defendant and Appellant.

COUNSEL

G. Martin Velez, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RUSHING, P. J.**—Defendant Bernard Benny Caldwell appeals a judgment entered following a jury trial during which he was convicted of felony battery with great bodily injury (Pen. Code, § 243, subd. (d)) and misdemeanor hit-and-run driving (Veh. Code, § 20002, subd. (a)(1)).

On appeal, defendant asserts the judgment must be reversed because the prosecutor committed misconduct during trial by vouching for the prosecution witnesses, stating facts not in evidence, disparaging defense counsel, and referring to defendant's failure to testify.

### STATEMENT OF THE FACTS AND CASE

In September 2009, Hans Yum was driving his car, a 1995 Nissan, in San Jose with his cousin, Michael Lee, who was seated in the front passenger seat. As Yum was driving through the intersection of Story and McLaughlin, his car was hit from behind by a green GMC van traveling about 10 miles per hour. Following the hit, Yum turned around and took a picture of the van and saw the driver of the van and another person sitting in the front passenger seat of the van.

The driver of the van stopped and walked toward the Nissan. Yum remained in his car. The driver opened Yum's driver side door and said, "You hit me." Yum responded, "That's not possible." Yum told the driver that the two could tell their sides to the police. Yum then looked down at his cell phone to call the police. While Yum made the call, the driver punched him in the face, then ran back to the van and sped away.

The punch to Yum's face caused a nasal ethmoid fracture, which required surgery to repair. Yum testified at trial that he continues to have numbness and discomfort from the hit.

On September 21, 2009, Detective Carlos Melo ran a records check for the registered owner of the van, which resulted in defendant's name as the owner. Detective Melo used defendant's Department of Motor Vehicles (DMV) photograph, and created a photo lineup using random photos from the DMV database with similar descriptions.

On September 29, 2009, Yum went to the police station to view a photo lineup to try to identify a suspect in his case. Yum testified that Detective Melo showed him six different pictures, one at a time.[1] Detective Francisco Hernandez was also present during the lineup. Yum looked at the pictures several times before selecting the third photo, depicting defendant, as the person who most closely resembled the assailant. Yum also identified defendant in court as the person who struck him.

A third party witness, Erica Cazarez was driving behind the green GMC van when she saw it hit Yum's Nissan. She saw the driver of the van get out after the collision, open the door of the Nissan, and hit Yum in the face. Cazarez then saw the driver walk back to the van and speed away. A few months after the accident, Cazarez met with Detective Melo, who showed her a photo lineup. Cazarez looked at the photos five times, and debated between the third and the sixth photo as depicting the driver of the GMC van, saying it was "one of them" that drove the van. Finally, Cazarez identified the third photo, which depicted defendant, saying, "I'm leaning towards him. The dreadlocks. The face. This is him. I'm pretty sure it's him."

Following the first meeting, Detective Melo again met with Cazarez to conduct a photo lineup at her residence on October 5, 2009. Detective Hernandez accompanied Melo, and showed Cazarez a series of six pictures, one at a time. Cazarez could not "completely decide" on which picture depicted the driver of the van until she had looked at the lineup three times. At that point, Cazarez identified the third picture, which depicted defendant, as being the person who drove the van.

Miguel Martinez testified that he purchased the GMC van involved in the accident on August 18, 2009, fixed it up, and sold it on August 29, 2009.

---

[1] Detective Melo testified at trial that it was Detective Hernandez who actually showed the pictures during the lineups, while Detective Melo was present.

Martinez identified the "pink slip" for the van that he signed transferring ownership to a person named "Caldwell Bernard."

The defense at trial was false identity. The defense called Dr. Deborah Davis as an expert in eyewitness memory and identification. Dr. Davis testified that eyewitness testimony is less accurate than most people believe, and that people have difficulty identifying individuals of a different race. In addition, Dr. Davis testified that most people believe that a suspect is in a photo lineup, and may select a person in the lineup who is not, in fact, the assailant.

Defendant was charged by information with felony battery with great bodily injury (Pen. Code, §§ 243, subd. (d), 12022.7, subd. (a); count 1) and misdemeanor hit-and-run driving (Veh. Code, § 20002, subd. (a)(1); count 2). Defendant was convicted of both counts following a jury trial.

### Discussion

Defendant asserts the judgment must be reversed because the prosecutor committed misconduct during the trial.

█ In considering the effect of the prosecutor's conduct, we are mindful that "[p]rosecutors . . . are held to an elevated standard of conduct. 'It is the duty of every member of the bar to "maintain the respect due to the courts" and to "abstain from all offensive personality." (Bus. & Prof. Code, § 6068, subds. (b) & (f).) A prosecutor is held to a standard higher than that imposed on other attorneys because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state. [Citation.] As the United States Supreme Court has explained, the prosecutor represents "a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." [Citation.]' " (*People v. Hill* (1998) 17 Cal.4th 800, 819–820 [72 Cal.Rptr.2d 656, 952 P.2d 673] (*Hill*).)

█ Prosecutorial misconduct—often occurring during argument—may take a variety of forms. It may include (without limitation) mischaracterizing or misstating the evidence (*Hill, supra,* 17 Cal.4th at p. 823); referring to facts not in evidence (*id.* at pp. 827–828); misstating the law, particularly where done in an effort to relieve the People of responsibility for proving all elements of a crime beyond a reasonable doubt (*id.* at pp. 829–830); attacking the integrity of, or casting aspersions on, defense counsel (*id.* at p. 832);

intimidating witnesses (*id.* at p. 835); referring to a prior conviction of the defendant that was not before the jury (*People v. Sanchez* (1950) 35 Cal.2d 522, 529 [219 P.2d 9]); predicting that the defendant, if not found guilty, will commit future crimes (*People v. Lambert* (1975) 52 Cal.App.3d 905, 910 [125 Cal.Rptr. 404]); stating a personal opinion, such as an opinion that the defendant is guilty (*People v. Kirkes* (1952) 39 Cal.2d 719, 724 [249 P.2d 1] (*Kirkes*)); or appealing to passions or prejudice, such as asking the jury to view the crime through the victim's eyes (*People v. Stansbury* (1993) 4 Cal.4th 1017, 1057 [17 Cal.Rptr.2d 174, 846 P.2d 756]).

■ Prosecutors are given " ' " 'wide latitude' " ' " in trying their cases. (*Hill, supra,* 17 Cal.4th 800, 819 [wide latitude given in closing argument].) "The applicable federal and state standards regarding prosecutorial misconduct are well established." (*People v. Samayoa* (1997) 15 Cal.4th 795, 841 [64 Cal.Rptr.2d 400, 938 P.2d 2] (*Samayoa*).) Under federal constitutional standards, a prosecutor's " ' "intemperate behavior" ' " constitutes misconduct if it is so " ' " 'egregious' " ' " as to render the trial "fundamentally unfair" under due process principles. (*Ibid.*) Under state law, a prosecutor commits misconduct by engaging in deceptive or reprehensible methods of persuasion. (*Ibid.*) Where a prosecutor has engaged in misconduct, the reviewing court considers the record as a whole to determine if the alleged harm resulted in a miscarriage of justice. (*People v. Duncan* (1991) 53 Cal.3d 955, 976–977 [281 Cal.Rptr. 273, 810 P.2d 131].) In considering prejudice "when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion. [Citation.]" (*Samayoa, supra,* 15 Cal.4th at p. 841.)

*Vouching for the Prosecution Witnesses*

Defendant argues the prosecutor impermissibly vouched for Detective Melo in rebuttal arguments, by suggesting to the jury that matters outside the record established the witness's credibility.

■ It is settled that "[a] prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record. [Citations.] Nor is a prosecutor permitted to place the prestige of [his or her] office behind a witness by offering the impression that [he or she] has taken steps to assure a witness's truthfulness at trial. [Citation.] However, so long as a prosecutor's assurances regarding the apparent honesty or reliability of prosecution witnesses are based on the 'facts of [the] record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief,' [his or

her] comments cannot be characterized as improper vouching. [Citations.]" (*People v. Frye* (1998) 18 Cal.4th 894, 971 [77 Cal.Rptr.2d 25, 959 P.2d 183].)

During closing argument, defense counsel discussed the photo lineup procedures used by Detectives Melo and Hernandez. Defense counsel stated, "[The prosecutor] said, Detective Melo, did you do anything wrong? No, I didn't do—I did—you did it by the book didn't you? Yes, I did. [¶] Well, folks, I ask you, who among us would be trusted to do our own job evaluation? What does he expect Detective [Melo] to say, gosh counsel, you got it, I totally screwed this one up. Maybe I'll get it next time. Of course he's going to vouch for his performance, but the fact remains those admonition forms that he showed you where it says witness statement . . . . And I asked Detective Melo about that witness statement, witness statement in quotes, the statement is theirs supposedly, but the writing is the police. They'll let them sign the form in that box, that's supposed to be their statement, but they won't let them write it, write it out. Those are the police's words. When [the prosecutor] tells you that there's nothing in that witness statement about it was number six or number three, remember who wrote that. That was not Ms. Cazare[z], that was Detective Hernandez . . . or Detective Melo, depending on which you believe."

In rebuttal, the prosecutor stated: "In case you missed it, maybe it was a little too subtle, not only did the defense attorney just accuse those officers of lying, but he also committed—both of them getting on that stand, raising their right hand and committing perjury. There's no other way to do that for this case. Why would Detective Melo and Detective Hernandez put their career on the line for this case?" Following an objection from defense counsel that the court overruled, the prosecutor went on to say, "What makes this case so special that these officers would perjure themselves? What do they have against Mr.—poor Mr. Caldwell? Nothing. They've got nothing against Mr. Caldwell. I mean—or maybe, maybe San Jose is such a great place to live, there's no crime, they have to go after innocent people. You know that's not true. There is no reason for those officers to lie."

 Here, defendant asserts that the prosecutor's statements during rebuttal impermissibly vouched for the officers who testified. However, the prosecutor's statements were in response to the defense attorney's argument that Detectives Melo and Hernandez lied about the procedures of the photo lineup. This response to defense arguments did not amount to the prosecutor's personal assurance of the officers' veracity or place the prestige of the district attorney's office behind the officers, and we do not find a reasonable likelihood the jury understood the prosecutor's rebuttal in those ways. Accordingly, we find no misconduct.

Defendant's reliance on *U.S. v. Witherspoon* (9th Cir. 2005) 410 F.3d 1142, 1146 and *U.S. v. Combs* (9th Cir. 2004) 379 F.3d 564, 574–576, is misplaced. In both *Witherspoon* and *Combs*, the prosecutors impermissibly vouched for the credibility of the law enforcement witnesses by arguing that the officers would lose their jobs and more if they committed perjury. Although here the prosecutor made a similar argument about the consequences to the officers if they committed perjury, he was not vouching for their credibility; he was rebutting the defense attorney's charge that the officers had lied about the photo lineup.

### Reference to Facts Not in Evidence

Defendant asserts the prosecutor committed misconduct by referring to facts not in evidence in his closing argument. Specifically, defendant takes issue with the prosecutor's representation that witness Cazarez was "scared to death" to testify when there was no evidence presented at trial that she was, in fact, scared to death.

In *Hill*, the Supreme Court explained that referring to facts not in evidence "is 'clearly . . . misconduct' [citation], because such statements 'tend[] to make the prosecutor his own witness—offering unsworn testimony not subject to cross-examination. It has been recognized that such testimony, "although worthless as a matter of law, can be 'dynamite' to the jury because of the special regard the jury has for the prosecutor, thereby effectively circumventing the rules of evidence." [Citations.]' [Citations.] 'Statements of supposed facts not in evidence . . . are a highly prejudicial form of misconduct, and a frequent basis for reversal.' " (*Hill, supra*, 17 Cal.4th at p. 828.)

Here, the prosecutor's statement that Cazarez was scared to testify was supported by the evidence. Cazarez testified that although no one had threatened her in this case, including defendant, she was afraid something might "happen to her" based on a relative's experience testifying in a criminal case. She stated that a family member who had testified in another criminal case was beaten badly after the trial, and that this was on her mind as she was testifying in the present case.

The present case is not similar to *Kirkes, supra*, 39 Cal.2d 719, on which defendant relies. In *Kirkes*, the prosecutor argued the witness was in fear of harm by the defendant. In that case, the court determined that the prosecutor's comments were based on facts not in evidence because there was no evidence the defendant had threatened the witness in any way. (*Id.* at p. 724.) Here, on the other hand, Cazarez testified her fear was based on the experience of a family member, and not on any threat from defendant or

others in this case. Therefore, the prosecutor's comments were not based on facts not in evidence, and did not relate defendant to any threats or crime.

*Impugning Defense Counsel*

Defendant argues the prosecutor improperly impugned defense counsel in his argument to the jury.

█ " 'A prosecutor is allowed to make vigorous arguments and may even use such epithets as are warranted by the evidence, as long as these arguments are not inflammatory and principally aimed at arousing the passion or prejudice of the jury.' [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1195 [24 Cal.Rptr.3d 112, 105 P.3d 487].) However, "[a] prosecutor commits misconduct if he or she attacks the integrity of defense counsel, or casts aspersions on defense counsel. [Citations.]" (*Hill, supra*, 17 Cal.4th at p. 832; see *People v. Sandoval* (1992) 4 Cal.4th 155, 184 [14 Cal.Rptr.2d 342, 841 P.2d 862] [it is misconduct when a prosecutor in closing argument "denigrat[es] counsel instead of the evidence" because "[p]ersonal attacks on opposing counsel are improper and irrelevant to the issues"].) " 'An attack on the defendant's attorney can be seriously prejudicial as an attack on the defendant himself, and, in view of the accepted doctrines of legal ethics and decorum [citation], it is never excusable.' [Citation.]" (*Hill, supra*, at p. 832.)

Here, the prosecutor questioned the credibility of the main defense expert witness, Dr. Deborah Davis, in argument to the jury saying that she is "kind of like Walmart for defense attorneys." Defense counsel objected to the statement, arguing the prosecutor improperly impugned the defense expert, demeaning defense counsel by extension. The court overruled the objection, and the prosecutor went on to say, "[o]ne stop shopping to try to put reasonable doubt in your minds . . . ." Defendant asserts these arguments implied that defense counsel purchased the testimony of the expert witness, thereby impugning the defense attorney's character.

We see nothing about the prosecutor's arguments about Dr. Davis's compensation as an expert as improper. While the arguments did suggest Dr. Davis was biased because of her compensation, they were well within acceptable trial practice, and did not attack or impugn the defense attorney's character by extension.

*Griffin Error*

Defendant asserts the prosecutor committed misconduct by commenting during closing argument on his failure to testify.

"In *Griffin* [*v. California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]], the United States Supreme Court held that the privilege against self-incrimination of the Fifth Amendment prohibits any comment on a defendant's failure to testify at trial that invites or allows the jury to infer guilt therefrom, whether in the form of an instruction by the court or a remark by the prosecution." (*People v. Clair* (1992) 2 Cal.4th 629, 662 [7 Cal.Rptr.2d 564, 828 P.2d 705].) In *People v. Hughes* (2002) 27 Cal.4th 287 [116 Cal.Rptr.2d 401, 39 P.3d 432], the California Supreme Court explained that "it is [*Griffin*] *error* for a prosecutor to state that certain evidence is uncontradicted or unrefuted when that evidence could not be contradicted or refuted by anyone other than the defendant testifying on his or her own behalf. [Citations.] . . . [I]t is error for the prosecution to refer to the absence of evidence that only the defendant's testimony could provide." (*Id.* at pp. 371–372, italics added.)

*Griffin* error may be committed by either direct or indirect comments on the defendant's failure to testify in his defense. (*People v. Medina* (1995) 11 Cal.4th 694, 755 [47 Cal.Rptr.2d 165, 906 P.2d 2]; *People v. Guzman* (2000) 80 Cal.App.4th 1282, 1288 [96 Cal.Rptr.2d 87].) " 'The prohibition, however, does not extend to . . . such comment on the defense's failure at trial to introduce evidence that could reasonably have been expected [citation]—save only, of course, the testimony of the defendant himself.' " (*People v. Sanders* (1995) 11 Cal.4th 475, 528 [46 Cal.Rptr.2d 751, 905 P.2d 420].)

In reviewing whether a prosecutor's comment constitutes *Griffin* error, appellate courts are called to determine "whether there is a reasonable likelihood that the jurors misconstrued or misapplied the words in question." (*People v. Roybal* (1998) 19 Cal.4th 481, 514 [79 Cal.Rptr.2d 487, 966 P.2d 521].)

Here, on rebuttal, the prosecutor addressed the defense attorney's argument that there were a number of theories about what happened in connection with the sale and registration of the van that would explain how it came to be registered in defendant's name after the assault. The prosecutor stated: "I have the burden of proof in this case beyond a reasonable doubt. That is my burden. And no party is required to call all witnesses. However, you may consider when a party does not call logical witnesses in making your determination in this case. What do I mean by that? If I wouldn't have called Detective Hernandez you could have said, hum, fishy. But on the flip side, even though it's my burden of proof, it can be—you can consider the fact that logical witnesses were not produced by the defense. [¶] A friend, family[] member, a co-worker." At that point, the defense attorney objected. Following a sidebar, the prosecutor continued, "There must be someone that can say that car didn't show up until after September 9th when that registration was done.

There's no such witness that was called. It's my burden of proof. I have to prove this case beyond a reasonable doubt, but you can take that into account."

Following these arguments, the court gave a curative instruction to the jury as follows: "Jurors, during the people's rebuttal argument, [the prosecutor] commented on the Defendant not calling witnesses. In the Court's view, this comment could be perceived by you as a comment on the Defendant not testifying. A comment of that nature would be improper. So to the extent that you understood the comment that way you should disregard it and treat that comment as if it were not made." In addition, the court reread CALCRIM No. 355 on a defendant's right not to testify.

■ Assuming the prosecutor's argument about failing to call logical witnesses implied that defendant failed to testify, and was in fact *Griffin* error, the error was harmless. The court's immediate use of the curative instruction, as well as the rereading of CALCRIM No. 355 reinforced to the jury the fact that defendant did not have an obligation to testify, and any inference to that effect from the prosecutor was improper. We presume the jury followed the court's instruction. (*People v. Bennett* (2009) 45 Cal.4th 577, 595 [88 Cal.Rptr.3d 131, 199 P.3d 535].) Therefore, given the curative instruction, and the prosecution evidence in this case, any misconduct was harmless.

### Due Process Violation

Defendant asserts the cumulative effect of all the alleged instances of misconduct in this case denied him a fair trial.

■ A prosecutor's conduct violates the due process clause of the Fourteenth Amendment to the United States Constitution when the prosecutor's misconduct renders the trial "fundamentally unfair." (*Strickland v. Washington* (1984) 466 U.S. 668, 700 [80 L.Ed.2d 674, 104 S.Ct. 2052].) "Improper argument by a prosecutor reaches this threshold of fundamental unfairness if it is 'so egregious as to create a reasonable probability that the outcome was changed.' [Citation.] A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." (*Davis v. Zant* (11th Cir. 1994) 36 F.3d 1538, 1545.)

Under the foregoing standard, there was no due process violation in this case. Given the strength of the prosecution case, specifically, that defendant was identified by three separate witnesses, including a third party witness, and the identifications were corroborated by evidence that defendant was the registered owner of the van that was purchased days before the assault, nothing the prosecutor did improperly undermines our confidence in the verdict.

## Disposition

The judgment is affirmed.

Premo, J., and Elia, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 1, 2013, S208912.