Filed 4/28/14  P. v. Parrilla CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRISTIAN PARRILLA,<br><br>    Defendant and Appellant. | 2d Crim. No. B248445<br>(Super. Ct. No. 2012020909)<br>(Ventura County) |

Christian Parrilla appeals a judgment following conviction of assault with a firearm, with findings of personal firearm use, infliction of great bodily injury, and commission of the crime to benefit a criminal street gang.  (Pen. Code, §§ 245, subd. (a)(2), 12022.5, subd. (a), 12022.7, subd. (a), 186.22, subd. (b)(1).)[1]  We affirm.

*FACTS AND PROCEDURAL HISTORY*

In the early morning of July 24, 2011, Justin Steele, a member of the tagging crew "DA," spray-painted graffiti on the side of a truck parked in the parking lot of Mi Puebilito market in Santa Paula.  When he heard "fast paced" footsteps behind him, he dropped the paint can and ran across the parking lot.  As he ran, he heard four gunshots and realized that he had been shot in the leg and foot.  Steele entered the back door of a social hall and stated to the cleaning crew that he had been shot.  The employees offered first aid and summoned emergency medical assistance.

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

A neighbor heard the gunshots that morning and saw one person run into the social hall and another person, a thin man of medium height, run away. Mi Puebilito market had outside surveillance cameras that recorded the parking lot shooting.

The recordings reflected a man tagging a truck in the parking lot by writing over existing graffiti. Another man approached, chased the tagger, and raised his right arm to shoot him. The recordings reflected "muzzle flashes" from the firearm. The victim fell and the shooter turned and ran away.

Santa Paula Police Officers Kenneth Clark, Matthew Alonzo, John Coffelt, and Hector Ramirez viewed the recordings and recognized Parrilla as the shooter, based upon their prior police contacts with him. At trial, the parties stipulated that Parrilla was an active member of the criminal street gang "12th Street Locos," and his moniker was "Krispy."

Alonzo testified that he had served as a gang investigator for the Santa Paula police department and knew Parrilla from three or four prior contacts. He stated that 12th Street Locos claimed the area of Mi Puebilito market. Alonzo opined that tagging by a rival gang member in the 12th Street Locos neighborhood "would be perceived as disrespect." The disrespect would invite an "immediate response," including criminal assault, which would benefit the criminal street gang.

On August 10, 2011, Ventura County sheriff's deputies searched Parrilla's residence pursuant to a search warrant. In his bedroom, they discovered gang graffiti and a newspaper article reporting the shooting of Steele.

Parrilla's friends and relatives testified at trial that, in their opinion, the man shooting at the tagger in the videorecording was not Parrilla. Parrilla's girlfriend also testified that he spent the morning of the shooting with her at her nearby apartment.

The jury convicted Parrilla of assault with a firearm, and found that he personally used a firearm, inflicted great bodily injury upon his victim, and committed the crime to benefit a criminal street gang. (§§ 245, subd. (a)(2), 12022.5, subd. (a), 12022.7, subd. (a), 186.22, subd. (b)(1).) The jury could not agree upon a charged count of attempted murder.

2

The trial court sentenced Parrilla to 24 years imprisonment, consisting of a four-year upper term, a 10-year upper term for the personal firearm use allegation, and a 10-year term for the criminal street gang allegation. The court imposed a $600 restitution fine, a $600 parole revocation restitution fine (stayed), a $40 court security assessment, and a $30 criminal conviction assessment (§§ 1202.4, 1202.45, 1465.8, subd. (a); Gov. Code, § 70373). It awarded Parrilla 702 days of presentence custody credit. The court imposed but stayed sentence for the great bodily injury allegation, and dismissed the attempted murder count.

Parrilla appeals and contends that 1) the trial court erred by not instructing with CALCRIM No. 315, regarding eyewitness identification and CALCRIM No. 3400, regarding an alibi defense; 2) insufficient evidence supports the judgment; 3) the prosecutor committed misconduct by vouching for the credibility of police officer witnesses; and 4) the trial court erred or abused its discretion in imposing sentence. He asserts that the instructional error and prosecutorial misconduct together hindered his primary defense of mistaken identification.

<em>DISCUSSION</em>

<em>I.</em>

Parrilla contends that the trial court erred by not instructing sua sponte with CALCRIM No. 315, regarding eyewitness identification, and CALCRIM No. 3400, regarding an alibi defense. He argues the error is prejudicial because misidentification was his primary defense at trial. Parrilla also asserts that he received the ineffective assistance of counsel because his attorney did not request the two instructions to relate eyewitness identification and alibi to the principle of reasonable doubt.

CALCRIM No. 315 instructs concerning the circumstances affecting eyewitness identification. It also instructs that the prosecutor bears the burden of proving the defendant guilty beyond a reasonable doubt. It is well-settled that the trial court is not required to instruct sua sponte concerning eyewitness identification. (*People v. Wright* (1988) 45 Cal.3d 1126, 1144 ["[The] instruction should be given when requested in a case in which identification is a crucial issue and there is no substantial corroborative evidence"].)

3

CALCRIM No. 3400 instructs that the defendant need not prove that he was elsewhere at the time of the crime, but that the prosecution must prove beyond a reasonable doubt that he committed the crime. In the absence of a request, the trial court is not required to instruct with an alibi instruction. (*People v. Freeman* (1978) 22 Cal.3d 434, 437-438.)

It is well-settled that a defendant is entitled to the effective assistance of counsel by the state and federal Constitutions. (*People v. Vines* (2011) 51 Cal.4th 830, 875.) Defendant bears the burden of establishing the inadequacy of trial counsel. (*Ibid.*) To demonstrate ineffective assistance of counsel, a defendant must show that counsel's performance was deficient because his representation fell below an objective standard of reasonableness under prevailing professional norms. (*Ibid.*) He must also show prejudice flowing from counsel's performance or lack thereof, i.e., a reasonable probability that, but for the errors, the result of the proceeding would have been different. (*Id.* at pp. 875-876.) A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Id.* at p. 876.) Generally, a defendant's burden is difficult to carry on direct appeal. (*Ibid*.)

For several reasons, the trial court did not err. First, as Parrilla concedes, he did not request either CALCRIM Nos. 315 or 3400, and neither instruction is required sua sponte. Second, the police officers who identified Parrilla were not eyewitnesses to the crime at the time it was committed. Like the defense witnesses and the jurors, the police officers identified Parrilla by viewing the video and the photographs taken therefrom. The jurors were also able to compare the video and photographs with Parrilla's physical appearance at trial.

In any event, the trial court instructed with CALCRIM No. 220, regarding the presumption of innocence and the prosecution's burden of proof beyond a reasonable doubt; CALCRIM No. 226, regarding the credibility of witnesses; CALCRIM No. 302, regarding the evaluation of conflicting evidence; and CALCRIM No. 333, regarding the evaluation of lay opinion testimony. We presume the jury understands and follows the court's instructions. (*People v. Myles* (2012) 53 Cal.4th 1181, 1212.) It is not reasonably probable that Parrilla would have obtained a more favorable outcome had counsel requested the two instructions. (*People v. Vines*, *supra*, 51 Cal.4th 830, 875-876.)

4

*II.*

Parrilla argues that insufficient evidence, i.e., "uncorroborated identification testimony," supports the judgment in violation of the due process of law guarantees of the federal and California Constitutions.

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Jackson* (2014) 58 Cal.4th 724, 749; *People v. Streeter* (2012) 54 Cal.4th 205, 241.) Our review is the same in a prosecution primarily resting upon circumstantial evidence. (*People v. Watkins* (2012) 55 Cal.4th 999, 1020.) We do not reweigh the evidence or reassess the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) We accept the logical inferences that the jury might have drawn from the evidence although we would have concluded otherwise. (*Streeter*, at p. 241.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.) In our review, we focus upon the evidence that was presented at trial, rather than evidence that could have been presented, but was not. (*People v. Story* (2009) 45 Cal.4th 1282, 1299.)

Sufficient evidence and reasonable inferences therefrom support the judgment. Four police officers reviewed the surveillance recording and photographs. The officers testified that they were confident that Parrilla was the man shooting the firearm in the recording, having had many prior contacts with him. The jury viewed the recording and the photographs and had them available for viewing during deliberations; they could also compare the recording and photographs to Parrilla's appearance at trial.

Moreover, Parrilla possessed a "cleanly cut" copy of a newspaper article describing the shooting. Expert testimony established that Steele was painting over graffiti on a truck in a rival gang's territory. The parties stipulated at trial that Parrilla was an active member of the 12th Street Locos. Alonzo testified that the 12th Street Locos claimed the

5

neighborhood around the Mi Puebilito market.  Although another conclusion may be drawn from this evidence, we do not substitute our views for that of the trier of fact.  (*People v. Albillar*, *supra*, 51 Cal.4th 47, 60.)

*III.*

Parrilla contends that the prosecutor committed misconduct by vouching for the credibility of the police officer witnesses.  He points to these comments made by the prosecutor during summation:  "[The police officers] don't have an interest in the outcome. . . .  Nothing that they are or who they become at the station or any promotion, none of it is based on the outcome of trials.  They investigate crimes because that is their job."  Parrilla asserts that the prosecutor's comments alluded to evidence outside the record, i.e., that the outcome of the trial had no effect upon a police officer's promotion or that a police officer witness is more credible because he is just doing his job.  He argues the prosecutor's misconduct denied him due process of law.

The standards governing review of claims of prosecutorial misconduct are well settled.  (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1275.)  "When a prosecutor's intemperate behavior is sufficiently egregious that it infects the trial with such a degree of unfairness as to render the subsequent conviction a denial of due process, the federal Constitution is violated.  Prosecutorial misconduct that falls short of rendering the trial fundamentally unfair may still constitute misconduct under state law if it involves the use of deceptive or reprehensible methods to persuade the trial court or the jury."  (*People v. Panah* (2005) 35 Cal.4th 395, 462.)  To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood that the jury understood or applied the complained-of comments in an improper or erroneous manner.  (*People v. Gamache* (2010) 48 Cal.4th 347, 371; *People v. Caldwell* (2013) 212 Cal.App.4th 1262, 1269.)  Although a defendant singles out words and phrases of claimed misconduct, we view the statements in the context of the whole argument.  (*People v. Dennis* (1998) 17 Cal.4th 468, 522.)

A prosecutor may comment upon the credibility of a witness based on facts contained in the record and any reasonable inferences therefrom, but may not vouch for the

credibility of a witness based upon personal belief or by referring to evidence outside the record. (*People v. Redd* (2010) 48 Cal.4th 691, 740.) "Prosecutorial assurances, *based on the record*, regarding the apparent honesty or reliability of prosecution witnesses, cannot be characterized as improper 'vouching,' which usually involves an attempt to bolster a witness by reference to facts *outside* the record." (*People v. Medina* (1995) 11 Cal.4th 694, 757.)

Parrilla has forfeited this contention because he did not object that the prosecutor was vouching for the witnesses' credibility. (*People v. Redd*, *supra*, 48 Cal.4th 691, 741.) His claim also fails on the merits, however, because the prosecutor's comments regarding the police officer witnesses were based upon facts established by their testimony and did not refer to evidence outside the record. (*Ibid.*; cf. *People v. Turner* (2004) 34 Cal.4th 406, 433 [prosecutor improperly referred to his prior experience with the witnesses].) Here the comment regarding police officers investigating crimes "because that is their job" did not refer to evidence outside the record. (*Redd*, at p. 741 [prosecutor's comments that police officer "doing her job," and another officer "do[ing] [his] job[] properly," not improper vouching].) Indeed, the prosecutor later argued in another context that police officers are human and sometimes make mistakes. Thus, the prosecutor relied upon evidence at trial and reasonable inferences therefrom, rather than personal knowledge or belief.

*IV.*

Parrilla raises several sentencing contentions. First, he contends that the trial court erred by imposing upper terms in reliance upon facts not found by the jury. He relies upon *Cunningham v. California* (2007) 549 U.S. 270, 290, holding that the Sixth Amendment jury trial guarantee is not satisfied if, to impose a longer sentence, the trial court must find an additional factor beyond the jury's verdict. (*People v. Myles*, *supra*, 53 Cal.4th 1181, 1221.)

In March 2007, the California Legislature amended section 1170, subdivision (b) of the determinate sentencing law to read: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." The trial court did not abuse its

7

discretion here when it imposed upper terms resting upon the seriousness of Parrilla's acts in chasing and shooting an unarmed victim who might have died had he not found refuge with the cleaning crew in a nearby social hall. To the extent that Parrilla argues that the court considered the unproven attempted murder count in imposing the upper terms, we disagree that the court did so. The court's discussion of reasons focused upon the victim's vulnerability and the seriousness of the assault crime.

*People v. Myles*, *supra*, 53 Cal.4th 1181, concerned crimes that were committed in 1996, many years prior to the Legislature's 2007 amendment of section 1170, subdivision (b). In any event, *Myles* concluded that the trial court's error in imposing an upper term enhancement based upon factors not found by the jury was harmless beyond a reasonable doubt. (*Id.* at p. 1221.) Like *Myles*, any error in imposing the upper term for the firearm enhancement is harmless beyond a reasonable doubt in view of the surveillance video depicting Parrilla chasing and shooting an unarmed victim.

Second, Parrilla argues that the trial court abused its discretion by sentencing him to upper terms for the crime and the personal firearm use allegation. He asserts that the court erred by concluding there were no mitigating sentencing factors. Parrilla points to these mitigating factors: he is a young man with no prior felony convictions; he is a father with family and community support; "the victim provoked the attack"; and the victim recovered from his injuries. (Cal. Rules of Court, rule 4.423(a) & (b) ["Circumstances in mitigation"].)

In a thoughtful sentencing statement, the trial judge stated that he read and considered the probation report, the parties' sentencing memorandums, and "each and every one" of 45 letters written to the court by Parrilla's friends and family members. The judge noted that the letters did not acknowledge that Parrilla was a criminal street gang member, although he admitted at trial that he was an active member in the 12th Street Locos and had body tattoos associated with the gang.

The trial judge stated that he understood Parrilla's motivation for the shooting, although it was not "justified provocation for what happened." The judge also noted that Parrilla was "in the difficult position" to continue to assert his innocence yet argue for a

8

lenient sentence. The judge repeated that he took "all those factors in consideration," and concluded that there were no mitigating factors for shooting an unarmed individual for tagging.

The trial court's sentencing decision is reviewed for an abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) A single factor may support a sentencing choice. (*People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413 ["'California courts have long held that a single factor in aggravation is sufficient to justify a sentencing choice, including the selection of an upper term for an enhancement'"].) The court need not weigh aggravating and mitigating factors, nor state a reason for rejecting a mitigating factor. (*Sandoval*, at p. 847.) On appeal, we do not weigh the aggravating and mitigating factors. (*People v. Delgado* (2013) 214 Cal.App.4th 914, 919.)

The trial court did not abuse its discretion by imposing upper terms of imprisonment. The judge stated that he considered the particular factors that Parrilla asserted as mitigating but, after reflection, did not view them as mitigating. The court properly exercised its discretion by considering and rejecting Parrilla's claims in favor of the seriousness of his crime, lack of provocation, and the vulnerability of his victim.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

9

Bruce A. Young, Judge

Superior Court County of Ventura

_____

Nancy Mazza for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stephanie A. Miyoshi, Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.