Filed 7/15/14  P. v. Sorto CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROGER SORTO,<br><br>    Defendant and Appellant. | 2d Crim. No. B245512<br>(Super. Ct. No. MA0566397-01)<br>(Los Angeles County) |

Roger Sorto appeals a judgment following conviction of misdemeanor interference with a peace officer (two counts) and misdemeanor assault on a peace officer.  (Pen. Code, §§ 148, subd. (a)(1), 241, subd. (c).)[1]  We modify the judgment to award Sorto an additional 54 days of presentence custody credit, and otherwise affirm.

*FACTUAL AND PROCEDURAL HISTORY*

On May 31, 2012, Los Angeles County Sheriff's Deputies Curtis Foster and Erik Jepson were patrolling near Sierra Highway and Avenue J in Lancaster.  They saw Sorto ride a bicycle westbound in an eastbound traffic lane, and ordered him to stop in a nearby parking lot.  Sorto complied and stopped his bicycle.  Foster parked the patrol vehicle and approached Sorto, who stated, "Fuck you.  You're only stopping me because I'm Black."  Sorto appeared agitated and reached toward a backpack that was strapped to

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

the frame of his bicycle. Foster ordered him to place his hands on the bicycle handlebars. Sorto ignored the order and cursed the deputies.

Foster then grabbed Sorto's arms to control him. Sorto shouted "[D]on't fucking touch me." Sorto pulled his left hand free and Foster pulled him from the bicycle onto the ground. As Sorto wrestled with Foster, Jepson grabbed Sorto's legs and right hand. When Sorto tugged on Foster's firearm holster, Foster struck Sorto in the head. Eventually, the deputies subdued Sorto and placed him in handcuffs.

Anthony Martinez was inside a nearby business when he saw Sorto scuffle with the deputies following the bicycle stop. Martinez described the incident as "a routine stop," with the deputies speaking "normally" to Sorto. Sorto was "cussing and screaming" and resisting the deputies. While Sorto and Foster were on the ground, Martinez saw Sorto hit Foster and Foster hit Sorto in response.

Following Sorto's arrest, a deputy found a container of pepper spray in Sorto's backpack. During a custodial interview, Sorto admitted that he attempted to reach into his backpack to obtain the pepper spray.

The jury convicted Sorto of two counts of misdemeanor interference with a police officer and one count of misdemeanor assault on a peace officer. (§§ 148, subd. (a)(1), 241, subd. (c).) The trial court suspended imposition of sentence and granted Sorto 36 months of summary probation regarding count 1, stayed imposition of sentence regarding count 2 pursuant to section 654, and sentenced Sorto to 214 days of confinement in county jail regarding count 3. The court imposed a $120 restitution fine, a $120 probation revocation restitution fine (stayed), an $80 court security assessment, and a $60 criminal conviction assessment, and awarded Sorto 214 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.44, 1465.8, subd. (a)(1); Gov. Code, § 70373.)

Sorto appeals and contends that: 1) the trial court may have improperly withheld confidential personnel records produced in response to his motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 537; 2) the trial court violated his constitutional right to confront witnesses by restricting cross-examination; 3) the

2

prosecutor committed misconduct constituting reversible error; and 4) the clerk's minute order heading as well as the computation of presentence custody credit are incorrect.

*DISCUSSION*

*I.*

Prior to trial, Sorto filed a motion pursuant to *Pitchess v. Superior Court*, *supra*, 11 Cal.3d 531, seeking discovery of complaints in police personnel records against Deputies Foster and Jepsen, concerning fabrication of charges or evidence, dishonesty, racial bias, excessive force, or misconduct amounting to moral turpitude. The trial court held an in camera hearing, discussed the nature of the documents produced, and ordered disclosure of information regarding some, but not all, of the complaints. Sorto requests that we review the sealed record of the in camera hearing to determine if the court abused its discretion in ruling on the discovery motion. (*People v. Prince* (2007) 40 Cal.4th 1179, 1285 [appellate court independently reviews sealed record to determine if trial court abused its discretion regarding disclosure].)

The transcript of the in camera hearing here is sufficient to permit our independent review. (*People v. Montes* (2014) 58 Cal.4th 809, 833 [sufficient basis for review where trial court describes content of personnel file for record]; *People v. Prince*, *supra*, 40 Cal.4th 1179, 1285 [same].) We have reviewed the transcript and conclude the trial court did not abuse its discretion by refusing to disclose each document produced in response to the discovery motion.

*II.*

Sorto contends that the trial court violated his Sixth Amendment right to confront witnesses by restricting his cross-examination of 1) Martinez's failure to speak to the defense investigator, and 2) Sergeant Brian Dorsey's failure to record the custodial interview. He points out that the court should allow wide latitude in cross-examination to test the credibility, knowledge, and recollection of a witness.

Pursuant to Evidence Code section 352, the trial court possesses discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission would create undue prejudice. (*People v. Pearson* (2013) 56 Cal.4th

3

393, 457.)  This discretion allows the court broad power to control the presentation of proposed impeachment evidence """to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues.""" (*People v. Riccardi* (2012) 54 Cal.4th 758, 808-809.)  We apply an abuse-of-discretion standard in review of the court's ruling pursuant to Evidence Code section 352.  (*Id.* at p. 809.)  We will affirm the court's exercise of discretion unless the court acted in an arbitrary, capricious, or patently absurd manner.  (*People v. Suff* (2014) 58 Cal.4th 1013, 1066.)

The Sixth Amendment guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him.  (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 678; *Alvarado v. Superior Court* (2000) 23 Cal.4th 1121, 1137.)  The constitutional right of confrontation, secured in state as well as federal prosecutions, means more than physically confronting witnesses; the essential purpose of confrontation is to secure the opportunity of cross-examination.  (*People v. Wilson* (2008) 44 Cal.4th 758, 794; *Alvarado*, at p. 1137.)  "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (*Delaware v. Fensterer* (1985) 474 U.S. 15, 20.)

Although an accused has a constitutional right to present all relevant evidence of significant probative value in his favor, he may not make an unlimited inquiry into collateral matters of slight relevance.  (*People v. Homick* (2012) 55 Cal.4th 816, 865.)  Thus, a ruling pursuant to Evidence Code section 352 excluding evidence of marginal impeachment value that would involve the undue consumption of time does not contravene the defendant's constitutional rights to confrontation and cross-examination.  (*People v. Pearson*, *supra*, 56 Cal.4th 393, 455; *People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1154.)

*Witness Anthony Martinez*

During cross-examination, Martinez testified that he spoke with the defense investigator regarding Sorto's detention and arrest.  In a sidebar conference, Sorto's counsel stated that Martinez did not speak with the defense investigator and that she

4

intended to call her investigator as a witness to so testify. Counsel added that she questioned Martinez about a discussion with the investigator "[b]ecause [she] believed [Martinez] was going to lie and perjure himself." The trial court refused to permit Sorto to question Martinez further regarding any contacts with the investigator, stating that counsel led Martinez "by the nose into an area of trickery," and that counsel "cannot entice a witness to lie about something then expect to be able to use that fact against him."

Sorto therefore argues that the trial court denied him the opportunity to impeach Martinez. He adds that Martinez's refusal to speak to the defense investigator reflects his partiality and bias toward the prosecution.[2] Sorto asserts that under any standard of review, the error is prejudicial.

The trial court did not impair Sorto's constitutional rights to confront and cross-examine Martinez by its limitation on this particular line of questioning. Counsel's stated reason for the questions was to permit Martinez "to lie and perjure himself." The questioning was of marginal relevance and within the court's power to limit. "'"[N]ot every restriction on a defendant's desired method of cross-examination is a constitutional violation. Within the confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance."'" (*People v. Harris* (2008) 43 Cal.4th 1269, 1292.)

*Sergeant Brian Dorsey*

Sorto contends that the trial court prejudicially restricted his cross-examination concerning Dorsey's failure to record his (Sorto's) custodial statements. Sorto points out that the sheriff's department recorded a "use of force" interview but not the custodial interview.

---

[2] Although Martinez's reluctance or failure to speak to the defense investigator might bear on his bias for the prosecution, defense counsel did not offer this justification to the trial court. We limit our review to the court's ruling based upon the justification or reason then offered.

5

The trial court refused to permit Sorto to question Dorsey regarding the recording of the department's "use of force" interview because that interview "was totally separate and independent" from the present criminal prosecution, and would present "a [section] 352 issue" and "cause all kinds of confusion." The court did not err and its ruling did not impair Sorto's confrontation and cross-examination rights. (*People v. Harris*, *supra*, 43 Cal.4th 1269, 1292 [trial court has wide latitude in restricting confusing or marginally relevant cross-examination].) Dorsey testified that he recorded interviews "on occasion," but not Sorto's interview. Dorsey also stated that no third person was present during the interview. Evidence of the recording of the "use of force" interview was irrelevant. Rulings pursuant to Evidence Code section 352 regarding evidence of marginal impeachment value that involve the undue consumption of time generally do not contravene a defendant's rights to confrontation and cross-examination. (*People v. Pearson*, *supra*, 56 Cal.4th 393, 455.)

*III.*

Sorto argues that the prosecutor committed misconduct during summation by arguing evidence outside the record. Specifically, he asserts that the prosecutor improperly vouched for the credibility of witness Martinez by suggesting that a videotape of his interview could prove or disprove his trial testimony. Sorto contends the error violates his federal and California constitutional rights to confrontation and to due process of law, and is reversible under any standard of review.

During trial, the prosecutor questioned Martinez whether he participated in a videotaped interview regarding Sorto's detention and arrest. Martinez responded affirmatively and stated that his recorded statements are consistent with his trial testimony. He also stated that he had reviewed the videotaped interview prior to his trial testimony. At trial, neither party played the interview recording.

During summation, the prosecutor asserted: "The defense attorney thinks Anthony Martinez is lying. . . . The defense attorney doesn't even know the reason why Anthony Martinez is lying. . . . Well, if [counsel] really believed he was lying, [counsel] could have played the video. . . . If there was something in there that showed that

6

Anthony Martinez is lying, the defense can play it."  The trial court overruled Sorto's stated objection of "improper argument."

The standards governing review of claims of prosecutorial misconduct are well settled.  (*People v. Williams* (2013) 56 Cal.4th 630, 671; *People v. Gonzales* (2012) 54 Cal.4th 1234, 1275.)  "When a prosecutor's intemperate behavior is sufficiently egregious that it infects the trial with such a degree of unfairness as to render the subsequent conviction a denial of due process, the federal Constitution is violated.  Prosecutorial misconduct that falls short of rendering the trial fundamentally unfair may still constitute misconduct under state law if it involves the use of deceptive or reprehensible methods to persuade the trial court or the jury."  (*People v. Panah* (2005) 35 Cal.4th 395, 462.)

To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood that the jury understood or applied the complained-of statements in an improper or erroneous manner.  (*People v. Edwards* (2013) 57 Cal.4th 658, 734; *People v. Caldwell* (2013) 212 Cal.App.4th 1262, 1269.)  Although a defendant singles out words and phrases of claimed misconduct, we view the statements in the context of the whole argument.  (*People v. Dennis* (1998) 17 Cal.4th 468, 522.)  Moreover, a prosecutor may fairly comment on the evidence, including the drawing of reasonable inferences or deductions.  (*Edwards*, at p. 736; *People v. Hamilton* (2009) 45 Cal.4th 863, 928.)

A prosecutor may comment upon the credibility of a witness based on facts contained in the record and any reasonable inferences therefrom, but he may not vouch for witness credibility based upon his personal belief or by referring to evidence outside the record.  (*People v. Redd* (2010) 48 Cal.4th 691, 740; cf. *People v. Turner* (2004) 34 Cal.4th 406, 433 [prosecutor referred to his prior experience with the expert witnesses].)  "Prosecutorial assurances, *based on the record*, regarding the apparent honesty or reliability of prosecution witnesses, cannot be characterized as improper 'vouching,' which usually involves an attempt to bolster a witness by reference to facts *outside* the record."  (*People v. Medina* (1995) 11 Cal.4th 694, 757.)

7

Sorto has forfeited this contention because he did not specifically object *and* request a jury admonition regarding the prosecutor's argument.  (*People v. Williams*, *supra*, 56 Cal.4th 630, 671.)  """As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion --and on the same ground -- the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety."""  (*People v. Hajek* (2014) 58 Cal.4th 1144, 1238.)

Forfeiture aside, Sorto's claim fails on the merits because the prosecutor's statements are fair comment regarding Sorto's failure to present logical evidence concerning Martinez's credibility.  (*People v. Valdez* (2004) 32 Cal.4th 73, 134 [prosecutor's comments did not mischaracterize evidence or assume facts not in evidence, but merely commented on the evidence and drew permissible inferences therefrom].)  During summation, Sorto referred to Martinez's recorded interview as well as his testimony and suggested that "he doesn't want to tell us the truth."  The prosecutor's general comment on the availability of the interview recording to impeach Martinez's testimony is a fair comment on Sorto's challenge to Martinez's credibility.  There is no misconduct.

*IV.*

Sorto argues that the heading in the clerk's minute orders erroneously reference count 4, attempted removal of a firearm, although the trial court dismissed that count on September 12, 2012, pursuant to section 1118.1.

The headings in the minute orders reference the four counts charged pursuant to the June 28, 2012, amended information; they do not state that Sorto was convicted of count 4.  The minute order of September 9, 2012, states that the trial court granted Sorto's section 1118.1 motion and acquitted him of count 4.  There is no error to correct.

Sorto contends that he is entitled to an additional 54 days of presentence custody credit.  The Attorney General correctly concedes.

8

We modify the judgment to award Sorto an additional 54 days of presentence custody credit, and otherwise affirm.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:


YEGAN, J.


PERREN, J.

9

Richard Naranjo, Judge

Superior Court County of Los Angeles

_____


Jonathan P. Fly, under appointment by the Court of Appeal, Ronnie Duberstein, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven E. Mercer, Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.