Filed 3/28/16  P. v. Toriz CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B259405 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA105451) |
| v. | |
| GARRICK NEIL TORIZ, | |
| Defendant and Appellant. | |
| _____ | |
| In re | B266790 |
| GARRICK NEIL TORIZ, | |
| on | |
| Habeas Corpus. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert M. Martinez, Judge.  Convictions affirmed.  Habeas corpus petition denied. Remanded for resentencing.

Maggie Shrout, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and Andrew S. Pruitt, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Garrick Neil Toriz raises a contention of prosecutorial misconduct following his convictions of unlawful taking or driving of a vehicle, and willfully evading a police officer, with prior prison term findings. The People raise a contention of sentencing error. In an accompanying habeas corpus petition, Toriz contends his trial counsel rendered ineffective assistance by failing to object to the alleged prosecutorial misconduct.

For the reasons discussed below, the convictions are affirmed, the habeas corpus petition is denied, and the matter is remanded to the trial court for resentencing.

## BACKGROUND

Viewed in accordance with the usual rules of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *Prosecution evidence.*

   a. *The traffic stop.*

On January 20, 2014,[1] Mario Perez was at home when his mother's black Toyota Camry was stolen from his driveway. Perez pursued in another car, but the Camry got away. Perez could not give the police a description of the thief.

On January 23, at approximately 11:00 p.m., Officer Matt Bowman of the West Covina Police Department spotted a black Toyota Camry without a license plate and pulled the car over. As Bowman exited his vehicle, the Camry sped off. Bowman jumped back into his patrol car and pursued, with his overhead lights and siren engaged. The Camry ran a stop sign and sped through a residential area. The Camry entered a cul-de-sac, where it slowed down, began to coast at about 10 miles per hour, and then hit a tree. Just before the collision, the male driver and a female passenger hopped out of the still-moving Camry and fled down an alleyway. Bowman pursued on foot. He could see that the driver was a Hispanic man, about five feet five inches to five feet seven inches tall, with very short hair. The driver eluded Bowman by jumping over a wall, but

---

[1] All further date references are to the year 2014, unless otherwise specified.

Bowman apprehended the passenger. Bowman found two open beer cans in the Camry's center console, one of which had Toriz's fingerprints on it.

The passenger identified herself as Brenda L. and said she lived at 532 Mangate in La Puente. Brenda told Bowman that the man driving the Camry was her boyfriend, Jason Martinez. Brenda was taken into custody.

b. *Brenda's jailhouse phone conversations.*

While in custody on January 23 and 24, Brenda made a series of telephone calls to her sister Lisa and to her mother. It appears from these conversations that Brenda lied to Bowman about who had been driving the Camry. During one phone call on January 23, Brenda asked: "You guys already told them his . . . name, no?," to which Lisa replied, "Yeah, we did." In another January 23 call Brenda said, "I don't know how they know, but (unintelligible) asked me if he has tattoos on his face. And I told them no, but he does." A call on January 24 contained this exchange:

"[Lisa]: OK but Brenda you have got to tell them that he was in the car with you.

"[Brenda]: I'm not telling them his name.

"[Lisa]: You . . .

"[Brenda]: It doesn't matter. I'm not going to tell on anybody, Lisa.

"[Lisa]: No no, I know but Brenda listen.

"[Brenda]: I'm not going to put my family in jeopardy. I'm not putting myself in jeopardy. It doesn't matter."

In another exchange, Lisa herself referred to threats:

"[Lisa]: [H]e was like I know where everybody in your mom's house sleeps.

"[Brenda]: So what? So what?

"[Lisa]: So he's threatening our family Brenda.

"[Brenda]: And I'm not going to tell on him."

When Lisa said, "Brenda, what you really need to do is just tell the truth," Brenda replied, "I'm not going to tell on him." In another call, Brenda told Lisa: "What happens if I give them the name? And then they go, they get him, and they find out I gave him the name. Then us, the whole family, is fucked because I'm a snitch."

3

In another exchange, Lisa asked:

"[Lisa]:  To who?  They're going to tell Garrick [Toriz]?  Hey Garrick, by the way, Brenda snitched on you?

"[Brenda]:  Yeah.  They will.  They will.  Because I've seen it happen before.

"[Lisa]:  Well let me tell you.  Mom already called . . .  the police saying hey this is Garrick, Garrick came and picked her up in the car and took her."

In another call, Brenda spoke to her mother:

"[Mother]:  Do you know he's out running around?  He got away.

"[Brenda]:  I know, I don't care.  And if they go to the house, don't tell them his name.

"[Mother]:  Why?

"[Brenda]:  [B]ecause I said so.

"[Mother]:  No, that's stupid.  I'm not protecting him.

"[Brenda]:  It's . . . Jason.

"[Mother]:  Huh?  What?

"[Brenda]:  Jason took it.

"[Mother]:  Who . . . I don't even know who that is.

"[Brenda]:  Exactly."

In another exchange, Brenda's mother urged her:

"[Mother]:  You need to get smart baby[.]

"[Brenda]:  I'm not going to give them his name.  That's the end of it.  Jason lent him the car, and I'm not going to tell them anything more.

"[Mother]:  And did you tell them this Jason's last name?

"[Brenda]:  Yes.

"[Mother]:  Yeah.  Then why is Garrick running?

"[Brenda]:  They can't find Jason in the system.

"[Mother]:  Then why is Garrick running then?

"[Brenda]:  I don't know but he has a clean record, stop saying people's names on the phone."

4

c. *Brenda's vacillating statements about who was driving the Camry.*

On January 25, the day following these telephone conversations, Brenda told Officer Bowman that it was her boyfriend, Garrick Toriz, who had been driving the Camry. Brenda said she invented the name "Jason Martinez" because she was afraid a local gang might try to punish her for fingering Toriz.

At trial, however, Brenda reversed herself again, testifying that although she had been at Toriz's house in Whittier earlier that day, it was Jason Martinez – not Toriz – who had been driving the Camry when Bowman made the traffic stop.

Brenda testified that at about 12:30 p.m. on January 23, Toriz picked her up from her mother's house in a black Lexus. They stopped at a store to purchase two beers before driving to Toriz's residence in Whittier. When they got to his house, Brenda gave the two unopened beer cans to Toriz, who put them in the refrigerator. Later, Brenda and Toriz argued about the possibility that he was going to have a baby with another woman. Brenda stormed out of Toriz's house at about 7:30 or 8:00 p.m., taking the two beer cans with her. She began walking home. While she was walking, she got a phone call from Jason Martinez (who had been calling her all day) and she asked him to give her a ride. Martinez picked Brenda up in a black Toyota Camry and they drove around drinking the two beers until Bowman made the traffic stop.

Brenda testified she had known Martinez for a couple of months, but that she did not know where he lived, his phone number, or what he did for a living. Brenda claimed she had met Martinez through her friend Britney, and that she used to go over to Britney's house two or three times a month. However, Brenda did not know Britney's phone number, her last name, or her address.

Brenda testified the only reason she named Toriz as the driver was because she had been pressured by the police. In exchange for naming Toriz, Officer Bowman promised that he would try to lessen her charge and not have her sent to county jail.

2. *Defense evidence.*

Lisa, Brenda's sister, testified that Officer Bowman called and texted her several times, asking her to convince Brenda to name Toriz as the driver. Lisa testified it was

Bowman who first mentioned Toriz's name, saying that if Brenda named Toriz as the driver then the police would let her go home. Lisa testified that during the jailhouse phone calls she had been lying to Brenda about Toriz making threats against their family, and that this had just been a ploy to convince Brenda to name Toriz as the driver: "Because I thought that maybe if Brenda thought that we were in danger in some way then maybe she would be convinced to say his name. Also, I thought if I could anger her at Garrick then maybe she would not hesitate to give his name so she would be released." Lisa testified that, despite this ploy, Brenda told her it was Jason Martinez who had been driving the Camry.

3. *Prosecution rebuttal evidence.*

Officer Bowman testified the police had been informed that someone made threats against the occupants of 532 Mangate (Brenda's mother's house), and that he was assigned to interview a witness about this. The witness referred Bowman to Lisa, who told him that "Toriz had shown up at . . . 532 Mangate and was making possible threats to the family members there, and then she had gotten on the telephone and talked to Mr. Toriz while he was at the 532 Mangate address." Lisa told Bowman that Toriz had been driving the Camry, and that Toriz "told her that he was not going back to jail and that he was not going to go to jail for the stolen vehicle." Bowman testified he told Lisa that he believed Brenda was lying about Jason Martinez having been the driver, but Bowman denied trying to get Lisa to pressure Brenda to incriminate Toriz.

4. *Trial outcome.*

Toriz was convicted of unlawful driving or taking of a vehicle with a prior (Veh. Code, § 10851, Pen. Code, § 666.5)[2] and driving in willful or wanton disregard for the safety of persons or property while fleeing from a police officer (Veh. Code, § 2800.2). In addition, he was found to have served two prior prison terms within the meaning of section 667.5.

---

[2]     All further statutory references are to the Penal Code unless otherwise specified.

**CONTENTIONS**

Toriz contends his convictions must be reversed because the prosecutor committed prejudicial misconduct during closing argument. The Attorney General contends the trial court committed sentencing error because, although a section 667.5 prior prison term enhancement allegation had been found true, it was neither imposed nor stricken.

**DISCUSSION**

1. *Any prosecutorial misconduct amounted at most to only harmless error*.

Toriz contends his convictions must be reversed because, during closing argument, the prosecutor personally vouched for Toriz's guilt. We are not persuaded there was prosecutorial misconduct; in any event, any error was harmless and would not warrant the reversal of Toriz's convictions.

   a. *Legal principles.*

Prosecutorial misconduct can violate either federal or state law. " ' "When a prosecutor's intemperate behavior is sufficiently egregious that it infects the trial with such a degree of unfairness as to render the subsequent conviction a denial of due process, the federal Constitution is violated." ' [Citations.] ' "Prosecutorial misconduct that falls short of rendering the trial fundamentally unfair may still constitute misconduct under state law if it involves the use of deceptive or reprehensible methods to persuade the trial court or the jury." [Citation.]' [Citation.] Misconduct that does not constitute a federal constitutional violation warrants reversal only if it is reasonably probable the trial outcome was affected. [Citations.]" (*People v. Shazier* (2014) 60 Cal.4th 109, 127.)

"Under California law, a prosecutor commits reversible misconduct if he or she makes use of 'deceptive or reprehensible methods' when attempting to persuade either the trial court or the jury, and it is reasonably probable that without such misconduct, an outcome more favorable to the defendant would have resulted. [Citation.] Under the federal Constitution, conduct by a prosecutor that does not result in the denial of the defendant's specific constitutional rights – such as a comment upon the defendant's invocation of the right to remain silent – but is otherwise worthy of condemnation, is not a constitutional violation unless the challenged action ' "so infected the trial with

7

unfairness as to make the resulting conviction a denial of due process." ' [Citations.]" (*People v. Riggs* (2008) 44 Cal.4th 248, 298.)

"To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." (*People v. Frye* (1998) 18 Cal.4th 894, 970, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

One form of prosecutorial misconduct is personally vouching for a defendant's guilt. "When arguing to the jury, it is misconduct for a prosecutor to express a personal belief in the defendant's guilt if there is a substantial danger that the jurors will construe the statement as meaning that the belief is based on information or evidence outside the trial record [citation], but expressions of belief in the defendant's guilt are not improper if the prosecutor makes clear that the belief is based on the evidence before the jury [citation]." (*People v. Mayfield* (1997) 14 Cal.4th 668, 781-782, disapproved on other grounds in *People v. Scott* (2015) 61 Cal.4th 363, 390, fn. 2.) " 'It is always improper for a prosecutor to suggest that a defendant is guilty merely because he is being prosecuted or has been indicted.' [Citation.] It is equally improper to imply to a jury that an underlying factual predicate of a crime must be true due to the fact of indictment or prosecution." (*Washington v. Hofbauer* (6th Cir. 2000) 228 F.3d 689, 701-702.)

As our Supreme Court has explained: "It is well established that statements by the prosecuting attorney, not based upon legitimate inferences from the evidence, to the effect that he has personal knowledge of the defendant's guilt and that he would not conduct the prosecution unless he believed the defendant to be guilty are misconduct. [Citations.] 'There can be no excuse for such comment.' [Citation.] The classic expression of the rule appears in this oft-quoted statement in *People v. Edgar*, 34 Cal.App. 459, 468 . . . [¶] 'When the district attorney declared that he would not prosecute any man he did not believe to be guilty he thereby wrongfully placed his

8

personal opinion of the guilt of the defendant in evidence in the case. He was privileged to argue to the jury that it was his opinion formed from deductions made from the evidence adduced at the trial that the defendant was guilty of the crime charged [citation]; but his declaration to the jury that he would not prosecute any man whom he did not believe to be guilty was tantamount to an assertion that he believed in the guilt of the defendant at the very inception of the prosecution; and necessarily such belief must have been founded upon the result of the district attorney's original and independent investigation of the charge, and therefore in all likelihood was based, in part at least, upon facts which did not appear and which perhaps could not have been shown in evidence.' " (*People v. Kirkes* (1952) 39 Cal.2d 719, 723-724.)

b. *Discussion*.

Toriz contends that, during the rebuttal portion of the People's closing argument, the prosecutor impermissibly voiced her personal belief in Toriz's guilt by telling the jury: "We are not asking you to hold someone accountable who's not guilty. We're not asking you to hold someone accountable who's being framed. We wouldn't be here if that's what you were asking me to do." As will be explained below, however, we conclude that – when viewed in context – the disputed statements did not amount to improper vouching and, even assuming arguendo that they did, there was no resulting prejudice.

(1) *Background*.

Toriz's trial strategy was to counter all the evidence tending to show that he had been driving the Camry (i.e., his fingerprints on the beer can, Brenda's recanted police statement naming him as the driver, the incriminating jailhouse phone calls between Brenda and her family) by constructing an alternative narrative to the effect that Jason Martinez actually existed and that he had been the driver. One element of this defense strategy was to persuade the jury that Toriz had been the victim of a police cover-up designed to shield officers (particularly Officer Bowman) from the lies they told during the investigation and at trial. Two key aspects of this purported cover-up were: (1) an allegation that, although Bowman initially described the Camry driver as being in his

9

mid-40's (whereas Toriz was actually in his early 20's), Bowman subsequently lied about this and claimed he had always described the driver as being in his 20's; and, (2) an allegation that Bowman had pressured Lisa to persuade Brenda to incriminate Toriz.

Brenda's sister, Lisa, testified for the defense that she did not actually know whether Toriz had been driving the Camry, and that – based on her communications with Bowman – she falsely told Brenda that Toriz had threatened their family. Lisa testified she became concerned that she was asking Brenda to name "an innocent man," and that she might be causing Toriz "to get in trouble for something that he never did."

During closing argument, defense counsel argued that the police gave false testimony regarding Bowman's description of the Camry driver: "I am going to suggest to you the officers are lying to cover up for each other." Discussing contradictions in the police testimony, defense counsel asked, "So who's lying here?" and argued that the police witnesses were engaged in "an attempt to make the truth be what they want it to be." Defense counsel told the jury: "And I suggest to you that the officers are covering for Officer Bowman."

It was in response to these assertions that, during rebuttal argument, the prosecutor said: "We are not asking you to hold someone accountable who's not guilty. We're not asking you to hold someone accountable who's being framed. We wouldn't be here if that's what you were asking me to do." Shortly thereafter, the prosecutor added: "All of the evidence points to one place. That's it. All of these other stories don't add up, don't make sense, not consistent with the stories you've heard" and "I am also asking you not to punish officers for doing their jobs." Then, after pointing to specific testimony from Bowman and another officer, the prosecutor added: "All of the evidence points to one place. That's it. All of these other stories don't add up, don't make sense, not consistent with the stories you've heard."

（2）*There was no prosecutorial misconduct.*

For several reasons, we are unpersuaded that there was prosecutorial misconduct here.

First, the prosecutor did not explicitly say she knew Toriz was guilty even before the trial started. (Compare *People v. Kirkes*, *supra*, 39 Cal.2d at p. 722 [prosecutor improperly told jury: "[I] knew prior to the time that I became associated in this particular prosecution . . . that this particular Defendant was guilty"].) And Toriz himself, at one point, characterized the disputed comments as the prosecutor "[t]elling the jury that she would not be *arguing* to it if Mr. Toriz was innocent" – which is different from saying that Toriz had only been *prosecuted* because he was guilty. (Italics added.) "[W]e 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." (*People v. Frye*, *supra*, 18 Cal.4th at p. 970.)

Second, immediately after making the disputed comments, the prosecutor cited specific trial testimony from two of the testifying police officers, and then argued: "All of the evidence points to one place. That's it. All of these other stories don't add up, don't make sense, not consistent with the stories you've heard." This tended to show that the prosecutor meant to be understood as commenting on the evidence. "[E]xpressions of belief in the defendant's guilt are not improper if the prosecutor makes clear that the belief is based on the evidence before the jury [citation]." (*People v. Mayfield*, *supra*, 14 Cal.4th at pp. 781-782.)

Third, it was very clear the prosecutor was responding to defense counsel's assertions that the police had lied and that Toriz was being framed. "No misconduct can be charged where the remarks are responsive to defense counsel's argument and do not go beyond the record. [Citation.]" (*People v. Hill* (1967) 66 Cal.2d 536, 562; see, e.g., *People v. Rosoto* (1962) 58 Cal.2d 304, 367, disapproved on another ground in *People v. Haston* (1968) 69 Cal.2d 233, 250, fn. 22 [prosecutor "was entitled to repudiate allegations that defendants had been framed" and "warranted in asserting that if the

11

People's case were composed of perjured testimony carefully collated by law enforcement officials, no juror would care to live in Orange County"].)

For these reasons, we conclude that the prosecutor's rebuttal argument in the case at bar did not involve the use of deceptive or reprehensible methods to persuade (see *People v. Shazier*, *supra*, 60 Cal.4th at p. 127), but was a fair response to defense counsel's assertion that there had been an organized police conspiracy to frame Toriz. (*Id.* at p. 150 [to determine if prosecutor committed misconduct by attacking defense counsel's integrity, consider whether comments were fair response to defense counsel's remarks, and if jury would likely have construed prosecutor's comments in objectionable fashion].) We conclude the prosecutor did not personally vouch for Toriz's guilt.

(3) *Any prosecutorial misconduct was harmless.*

Even assuming, arguendo, that the disputed comments amounted to improper vouching, we find the error harmless. "Error with respect to prosecutorial misconduct is evaluated under *Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824,] to the extent federal constitutional rights are implicated, and *People v. Watson* (1956) 46 Cal.2d 818 . . , if only state law issues were involved. [Citation.] *Chapman* is implicated if the prosecutor's conduct renders the trial so fundamentally unfair that due process is violated. [Citations.] *Watson* applies where the prosecutor uses ' " ' "deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " ' [Citation.]" (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 564.)

Here, the disputed comments were so brief and fleeting that we do not believe they could have "undermine[d] the fundamental fairness of the trial and contribute[d] to a miscarriage of justice. [Citation.]" (*United States v. Young* (1985) 470 U.S. 1, 16, fn. omitted.) As the Supreme Court held in *Young*: "Although it was improper for the prosecutor to express his personal opinion about respondent's guilt, [citations], when viewed in context, the prosecutor's remarks cannot be read as implying that the prosecutor had access to evidence outside the record. The jury surely understood the comment for what it was – a defense of his decision and his integrity – in bringing criminal charges on the basis of the very evidence the jury had heard during the trial."

12

(*Id*. at p. 19.)  Here, too, we do not read the prosecutor's comments as implying that she knew Toriz was guilty because of some extra-judicial evidence the jury was not going to see.  Rather, the context of her comments made it clear that she was merely defending her integrity.

In addition, we have no doubt that the jury's verdict was unaffected by the prosecutor's comments.  The disputed suspect description and other assertions of police misconduct were almost entirely beside the point.  The crucial issue was simply which of Brenda's two stories the jury believed:  that the driver had been Toriz, or that the driver had been someone named Jason Martinez.  The evidence overwhelmingly demonstrated that Brenda had invented Jason Martinez in order to protect Toriz.  There is no other rational explanation for the recorded jailhouse conversations between Brenda and her family, conversations which demonstrate that Brenda – upset at learning that her family told the police Toriz had been driving the Camry – feared she would face retaliation as a result.  Lisa's testimony – that she invented the story about Toriz's threatening their family as a way of persuading Brenda to cooperate with the police – was entirely lacking in credibility.

There is no reason to think that the outcome of the trial would have changed had the alleged prosecutorial misconduct not occurred.  (See *People v. Medina* (1995) 11 Cal.4th 694, 758 ["prosecutor's [improper] statement that 'no case I have ever seen' had such overwhelming evidence" was harmless error "in light of the strong ballistic evidence linking defendant to the . . . offense"]; see also *People v. Sanchez* (1995) 12 Cal.4th 1, 66, disapproved on other grounds in *People v. Doolin*, *supra*, 45 Cal.4th at p. 421, fn. 22 ["although the prosecutor may have, at times, pushed the limits of proper advocacy, any misconduct that did occur could not have contributed to the verdict and was thus rendered harmless"]; *People v. Fields* (1983) 35 Cal.3d 329, 363 [improper appeal to jury's sympathy and passion was harmless error under *Watson* because "evidence of defendant's guilt . . . was overwhelming" and there was "no reasonable probability [the misconduct] affected the verdict"].)

13

In sum, we conclude there was no prosecutorial misconduct in this case but, even if there had been, any error was necessarily harmless given the overwhelming evidence of Toriz's guilt.[3]

2. *Trial court must either impose or strike prior prison term enhancement finding.*

As the Attorney General points out, although it was determined that Toriz had served two prior prison terms within the meaning of section 667.5, subdivision (b), at sentencing the trial court imposed only one enhancement. The trial court said nothing whatsoever about the second prior prison term finding.

Trial courts must either impose or strike sentence enhancements. "The failure to impose or strike an enhancement is a legally unauthorized sentence subject to correction for the first time on appeal. [Citations.]" (*People v. Bradley* (1998) 64 Cal.App.4th 386, 391 [regarding prior prison term enhancement]; accord *People v. Flores* (2005) 129 Cal.App.4th 174, 187-188 [regarding gang enhancement].) "Once the prior prison term is found true within the meaning of section 667.5(b), the trial court may not stay the one-year enhancement, which is mandatory unless stricken." (*People v. Langston* (2004) 33 Cal.4th 1237, 1241.)

We will order the matter remanded to the trial court for resentencing, at which time the trial court will either impose the second prior prison term enhancement finding or strike it.

---

[3]     Given this determination, we need not address the claim in Toriz's accompanying habeas corpus petition to the effect that his trial attorney was incompetent for failing to object at trial to the prosecutor's disputed remarks. It is true that, " '[a]s a prerequisite for advancing a claim of prosecutorial misconduct, the defendant is required to have objected to the alleged misconduct and requested an admonition "unless an objection would have been futile or an admonition ineffective." [Citation.]' [Citation.]" (*People v. Shazier, supra*, 60 Cal.4th at p. 127.) However, in the interests of judicial economy and to avert potential ineffective assistance of counsel claims, we have addressed the merits of this issue. (See *People v. Yarbrough* (2008) 169 Cal.App.4th 303, 310.)

## DISPOSITION

The convictions are affirmed and the habeas corpus petition is denied.  The matter is remanded to the trial court for resentencing in conformance with this opinion.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EDMON, P. J.

We concur:



ALDRICH, J.



LAVIN, J.